# 15-CV-1518 JLR



SEP 23 2015

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

SAMUEL L. BIERS,

      Plaintiff,

vs.

WASHINGTON STATE LIQUOR AND
CANNABIS BOARD;
JANE RUSHFORD, RUTHANN KUROSE and RUSS
HAUGE in their official capacities as members
of the Washington State Liquor and Cannabis
Board, and in their individual capacities; and
ROBERT WATSON FERGUSON in his official
Capacity as Attorney General of the
Defendant STATE OF WASHINGTON;
DANIEL KIRBY;
KIRBY PROPERTIES LLC;
CANOPY PARK LLC;
CELESTEVA LLC;
DANIEL TIGHE;
MOSAIC INSURANCE ALLIANCE LLC;
NICOLE MICHELLE PAVON-ERWIN-SMITH;
BRENT GARRETT ERWIN;
JAMES HARRISON VANHOUTE;

      Defendants.

**COMPLAINT**

CASE NO._____

Jury Trial Demanded[1]

---

[1] Omnes legume servi sumus ut liberi esse possumus (We are all servants of the laws in order that we may be free), Cicero.  Jury trial demanded for all claims grounded outside of equity.

1

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Samuel L. Biers, brings this Complaint against the Defendants, Washington State Liquor and Cannabis Board, Jane Rushford Ruthann Kurose and Russ Hauge, in their official capacities as Board members of WSLCB (collectively "Board") and their individual capacities; Robert Watson Ferguson in his official capacity as Washington Attorney General representing the defendant STATE OF WASHINGTON and individual capacity; Daniel Kirby, individually and also dba Daniel A. Kirby Sole Proprietor and Daniel Allen Kirby, (collectively "Kirby" and individually "DAK"); and Kirby Properties LLC ("KP"); Canopy Park LLC ("Canopy"); Celesteva LLC ("Celesteva); Daniel Tighe ("Tighe"); Mosaic Insurance Alliance LLC ("Mosaic"); Nicole Michelle Pavon-Erwin-Smith ("Smith"); Brent Garrett Erwin ("Erwin") and James Harrison VanHoute ("VanHoute"), and alleges the following:

I.

### PRELIMINARY STATEMENT

1. Plaintiff is an individual who's business, interests, property and personal reputation were injured by the conduct, malfeasance or operations of the Defendants, individually and jointly.

2. Defendant Board is an agency of the State of Washington and officials appointed to act on its behalf for the State of Washington.  RCW 66.08.020. Board regulates, enforces and issues marijuana licenses pursuant to state law.  RCW 69.50 *et seq*.  By creating an unlawful statutory and regulatory framework that invites citizens to participate, yet unknowingly attaching criminal status, Board created a system of involuntary servitude or slavery whereby individual citizens provide labor, property and services that benefit the state

without receiving just compensation, in violation of the 5th, 13th and 14th Amendments of the U.S. Constitution, *inter alia*. At all times relevant to this action, Board is a state agency and officials were duly organized, operating and existing pursuant to state law.

3.  Defendant officials Jane Rushford, Ruthann Kurose and Russ Hauge -were appointed by the Governor of Washington and are responsible to manage Board; hold public meetings; make policy decisions and adjudicate license and enforcement actions on behalf of the Board. The Board enacted and enforces regulations and rules in opposition with existing federal laws regarding the manufacturing, distribution, sales and trafficking of marijuana. At all times relevant to this action, on information or belief, Rushford, Kurose and Hauge were employees of the State of Washington acting under color of state and local law, to wit, under color of state statutes, ordinances, regulations, rules, policies, customs and usages of the State of Washington. On information or belief, at all times relevant to this action, Rushford, Kurose and Hauge are named herein both personally and in their official representative capacities as members of the "Cannabis Board," employed by the STATE OF WASHINGTON, and that each and every act or omission alleged herein were done by Defendants under cover and pretense of the statutes and laws of the STATE OF WASHINGTON under and by virtue of their authority as officials and employees of the STATE OF WASHINGTON.

4.  Defendant Robert Watson Ferguson is the Attorney General of the State of Washington. In that capacity, he also acts as general counsel for the Board. RCW 66.08.022. Plaintiff brings specific claims based in law and equity against Attorney General Ferguson in his official capacity and individual capacity for any act or omission contrary to law or authority.

5.  Celesteva is a State of Washington licensed marijuana business, authorized by Board to grow
    and produce up to 10,000 square feet of marijuana plant canopy.  Celesteva's business exists
    in opposition with the Controlled Substances Act of 1970, ("CSA").  Under the Racketeer
    Influenced and Corrupt Organizations Act, ("RICO"), Celesteva; KP; Canopy; Mosaic and DAK
    constituted various, alternating forms of the racketeering enterprise with the Board and
    Washington, as Kirby; Tighe; VanHoute; Erwin; Mackey and Smith operated and derived
    significant income, proceeds or revenue from commercial marijuana and conspired with
    others to violate federal marijuana laws.  As conspirators with Celesteva, Mosaic; Tighe; KP;
    Kirby and Canopy are jointly and severally liable for the resulting injuries to the Plaintiff.
    Celesteva, Mackey, Kirby, Smith, Erwin and VanHoute are and were willful participants in a
    joint activity with Washington or its agents such that they are cloaked under the color of
    state action.  U.S. v. Price, 383 U.S. 787, 794 (1966); e.g. U.S. v. Farmer, 923 F.2d 1557 (11th
    Cir. 1991).  Plaintiff made multiple requests from the Board, Commander Duzbay, and field
    investigator, Allen Wambold, seeking resolution and a statement of separation between
    Board and Defendants without success.  It is the "[m]isuse of power, possessed by virtue of
    state law and made possible only because the wrongdoer is clothed with the authority of
    state law," that Defendants conduct was exercised against the Plaintiff.  Monroe v. Pape,
    365 U.S. 167, 184 (1961)(internal omitted).

6.  Defendants Celesteva, Kirby, Smith, VanHoute and Erwin falsely asserted and advertised that
    their businesses were "legal" despite subsequent information that under federal law any
    commercial marijuana business constitutes a felony violation of the CSA for dealing,
    cultivating and selling marijuana whether private person or state official.  Dealing in

4

commercial marijuana is racketeering activity under <u>RICO</u>, and those that engage in a

pattern of racketeering activity through a corporation or other enterprise are liable for three

times the economic harm they caused to the Plaintiff, entitling the Plaintiff to an award of

damages, costs and fees.

7.  Celesteva entered into an agreement with the Plaintiff whereby the officers, Kirby; Smith;

Erwin; VanHoute (and subsequently Mackey), agreed, under color or authority of state law,

to take the Plaintiff's services, labor and intangible property to profit from the sale of

Celesteva and never pay the Plaintiff.  To reinforce this plan, Celesteva's officers, Canopy,

DAK and KP claimed Tighe as their licensed "attorney" and "lawyer" to distract the Plaintiff

from the false and fraudulent scheme by asserting the sword and shield of Washington and

Board's authorization.  Tighe was at all times a "disbarred" attorney that several of the

Defendants used for nefarious business matters.  On information or belief Kirby and Tighe

threatened the Plaintiff with violence, threatened the use of a retired state judge to avoid

payment, (who referred Defendant Bloomfield to Kirby), then threatened the use of legal

process to avoid the payment and finally threatened to negatively jeopardize the outcome in

a separate and distinct lawsuit involving the Plaintiff.  Ultimately, Celesteva and Kirby then

paid attorney Stephanie Bloomfield with proceeds derived from the marijuana operations to

threaten, coerce and defraud the Plaintiff from receiving any remuneration for his labor,

services or intangible property that Defendants received and subsequently sold with other

security and assets of Celesteva.  Ms. Bloomfield willingly participated in the racketeering

activities of these Defendants in violation of her sworn duty.

8.  When confronted with the illegal business practices, Kirby; KP; Tighe; Celesteva; Canopy; VanHoute; Mackey; Erwin and Smith initiated a fraudulent and unlawful scheme, device or plan through interstate commerce to hide assets, property, accounting books, files and papers, then offered a false and fraudulent commercial insurance policy with Mosaic.  These Defendants implemented numerous state and federal anti-trust violations, including monopolization and price discrimination to further shield or hide their racketeering activities and cause injury to the public interests and the Plaintiff.

## II.
### JURISDICTION AND VENUE

9.  Jurisdiction of this court arises under 28 U.S.C. §1331; 28 U.S.C. §1367; 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §2511 and 2520; 18 U.S.C. §§1962(c) and 1964(c); 42 U.S.C. §§1981, 1983, 1985, 1986 and 1988; and 28 U.S.C. §1367 for pendant state law, federal statutory and common law claims as cited herein.

10. Plaintiff brings this action to recover damages for acts on the part of Defendants in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, et seq., ("RICO"); Controlled Substances Act, 21 U.S.C. §§801 et seq., ("CSA");  Washington Consumer Protection Act, RCW 19.86, et seq., ("WCPA") and additional authorities as cited herein. Plaintiff further asserts the jurisdiction of the court pursuant to the Declaratory Judgment Act, 22 U.S.C. §§2201and 2202 and 42 U.S.C. §§1981, 1983, 1985, 1986 and 1988.

11. The alleged violations described herein occurred in the State of Washington.  Accordingly, venue is appropriate with this court under 28 U.S.C. §1391(a),(b) and (d) and 18 U.S.C. §1965(a) as Washington is the judicial district which any defendant resides, all defendants are

residents or domiciled in Washington, or a substantial part of the events or omissions giving

rise to this action occurred, or a substantial part of property subject of this action is situated.

12.   This court has jurisdiction and is the proper venue to determine the Plaintiff's request for

relief, pursuant to 28 U.S.C. §§2201 and 2202 et seq.  as a threshold matter, seeking a speedy

determination of the existence or non-existence of any right, power, duty, liability, privilege,

disability or immunity or of any fact upon which the legal relations between the parties

depend, or of any status as requested herein.

## PARTIES

### *Plaintiff*

13.  Plaintiff, Samuel L. Biers, is a natural person over the age of eighteen (18) who resides

in the State of Washington, and a wildland firefighter, who, because of the egregious

conduct by Defendants, is precluded from affording necessary medical treatment and will

probably expire before final resolution of this action.

### *Defendants*

14.  At all times material hereto, Defendant Daniel Kirby, ("Kirby"), was and is a natural

person over the age of eighteen (18) who resides in the State of Washington at:  3800

Jester Court NW; Olympia, Washington 98502, or alternatively 7631 Stable CT SE; Olympia,

WA 98502.  In an unrelated bankruptcy filing Kirby listed himself as a "business

acquaintance" and "unsecured creditor" of Tom Hazelrigg III,(*Kirby also claimed he was a*

*secured creditor and that Hazelrigg owed him $6 million*). Kirby claimed ownership in

Capitol Coachman Mazda-Jeep of Olympia.  Kirby solely owns Canopy Park LLC.[2]  Relevant

to this action Kirby also used the business name "Daniel A Kirby" (UBI #602599466) and

"Daniel A Kirby Sole Proprietor," (UBI #601552318), (*Plaintiff references "Kirby" to include*

*both DAK and DAK Sole Prop*), using the registered Trade Names "Capitol Landscaping,"

"Kirby Farms," "Kirby Farms Home & Garden Designs," and at all times within his filings and

documents submitted to Washington and the federal government, including his application

for a marijuana license, Kirby lists the same physical address for all entities as Kirby's

personal residence:  3800 Jester Court; Olympia, Washington 98502.

15.  Canopy Park LLC, ("Canopy"), is a State of Washington Limited Liability Company, (UBI

603380986), organized in March 3, 2014 with Daniel Kirby as the Registered Agent and sole

owner, but the Washington Secretary of State contains a non-existent physical address:

"3800 Custer Court NW; Olympia, WA 98502," (as *of April 21, 2015 according to Thurston*

*County Permit Assistance Center's Address Officer, Sherry Schuster, there is no 3800 Custer*

*Court NW; Olympia, Washington*).[3]

16.  At all times hereto Kirby Properties LLC, ("KP"), maintains the same physical address as

Kirby's residence:  3800 Jester Court; Olympia, Washington 98502 and lists its Registered

Agent as:  Daniel Allen Kirby; 3800 Jester Ct NW; Olympia, Washington 98502.  KP was first

organized in the State of Washington as a Limited Liability Company on December 19, 2000

and is currently registered with the Washington Secretary of State under UBI # 602085119.

---

[22] On April 20, 2015 Washington Secretary of State Corporations Division revealed that the UBI for Canopy Park LLC expired March 31, 2015.
[3] Sherry Schuster, Thurston County Address Officer telephonic interview (360) 754-3355 ext. 7013.

17. At all times material hereto, Defendant Daniel J. Tighe, ("Tighe"), was and is a natural person who is over the age of eighteen (18). Tighe identified himself as the attorney for Kirby, KP and Canopy and Mason Family Farms LLC in violation of RCW 2.48.180(2)(a). Tighe resides in the State of Washington at:  7420 SE Thrush Drive; Olympia, Washington 98513 and provided legal advice for Kirby; KP; Plaintiff; VanHoute; Smith; Erwin; Sundance RV & Auto Center; Celesteva LLC; Mason Family Farms LLC; and Canopy.

18. Celesteva LLC, ("Celesteva"), is a State of Washington Limited Liability Company, (UBI #603356809), organized on December 10, 2013 with its Registered Agent is listed as: Daniel Allen Kirby; 3800 Jester Court NW; Olympia, Washington 98502.  When Celesteva hired Plaintiff, its Board of Directors was composed of:  President and Manager-James VanHoute; Member-Brent Erwin; Member-Nicole Smith and Member-Daniel Kirby, all with an equal 25% ownership. See Exhibit A.

19. Mosaic Insurance Alliance LLC, ("Mosaic"), is a Washington State business entity, (UBI #603049106), that claims it "delivers quality insurance solutions to individuals in Washington, Oregon" and Arizona "specializing in Personal and Commercial insurance coverage," that advertises, solicits and provides insurance to the marijuana industry, (*Mosaic provides an online instructional video by Mosaic LLC member Paul Pukis explaining how to get insurance as a marijuana business in Washington*), further advertising itself as "Home of the WA State Marijuana Insurance Program" and listing itself as a member of the "Marijuana Business Association" and the "Washington Marijuana Association" on its internet website www.wai502insurance.com. See Exhibit B. Mosaic lists its principal place of business as:  2122 164th Street NW, Suite 301; Lynnwood, Washington 98087-7812 and

its Registered Agent/Member Paul Pukis at: 5019 146th Street SE; Everett, Washington

98208. At all times relevant to this Complaint Mosaic issued a policy to Celesteva LLC,

received insurance premiums from Celesteva LLC and insured Celesteva against loss. Id.

20. Nicole Michele Pavon-Erwin-Smith, ("Smith"),was and is a natural person over the age

of eighteen (18) who either resides in the State of Washington at: 1347 Fern Street SW;

Olympia, Washington 98502, (*Smith also lists with Washington State Department of Motor*

*Vehicles the same address as Co-defendant Daniel Kirby at: "3800 Je[s]ter Court NW;*

*Olympia, Washington 98502"*).  Smith held 25% ownership in Celesteva LLC from formation

until, *inter alia*, Smith cashed a Cashier's Check drawn from funds originating in bank

accounts of Kirby, KP and Canopy in the amount of $15,000.00, *infra*. See Exhibit A.

21. Brent Garrett Erwin, ("Erwin"), was and is a natural person over the age of eighteen

(18) who resides in the State of Washington at: 1619 Fern Street SW; Olympia, Washington

98502 and is a U.S. Coast Guard Reserve member.  As "Chief Cultivation Officer" Erwin held

25% ownership in Celesteva LLC from formation until, *inter alia*, Erwin cashed a Cashier's

Check drawn from funds originating in bank accounts of Kirby, KP and Canopy in the

amount of $15,000.00, *infra*. See Exhibit A.

22. James Harrison VanHoute, a.k.a. James Winn-VanHoute during period as a petty thief,

("VanHoute"), was and is a natural person over the age of eighteen (18) who resides in the

State of Washington at: 1100 Fern Street SW Apt. 34-104; Olympia, Washington 98502 and

also lists 609A Grant Lane SW; Tumwater, Washington 98512.  VanHoute held 25%

ownership in Celesteva LLC, and occupied the office of President and Manager of Celesteva

from formation until, *inter alia*, VanHoute cashed a Cashier's Check drawn from funds

originating in bank accounts of Kirby, KP and Canopy in the amount of $15,000.00, *infra*.
See Exhibit A.

23.  Stephanie Bloomfield was and is a natural person over the age of eighteen (18) who resides in the State of Washington at: 2902 North Puget Sound Avenue; Tacoma, Washington 98407.

### *State of Washington Board and Individuals*

24.  Washington Attorney General Robert Watson Ferguson is a natural person over the age of eighteen (18) who resides in the State of Washington and is the official representative of State of Washington and Board at:  1125 Washington Street SE; Olympia, Washington 98504.  Attorney General Ferguson acted at all times relevant to this action under color and authority of state law, to wit, under color of statutes, ordinances, regulations, rules, customs and usages, in violation of federal law by enforcing and upholding state commercial marijuana laws in clear contravention with federal criminal prohibitions against commercial marijuana.

25.  The Board is a state agency located at 3000 Pacific Avenue SE; Olympia, Washington 98504, and is composed of natural born persons over the age of eighteen (18) who reside in the State of Washington, and are the official agents of the Board, responsible for the unlawful acts complained of herein, as authorized by state law, and as such three (3) Defendants are named in their individual capacities:  Jane Rushford, Ruthann Kurose and Russ Hauge.  The Board, through enforcement  of state regulations and statutes that are contrary to federal law, issued marijuana producer and processor licenses to Defendant Celesteva.  See Exhibit C.  The issuance of this license to Celesteva, and others, unlawfully

violates the Plaintiff's rights under the 5th, 13th and 14th Amendment, Article IV -Privileges and Immunities Clause and the Equal Protection Clause, 42 U.S.C. §1981(a)-(c); 42 U.S.C. §§1983, 1985, 1986 and 1988 viz-a-viz the Supremacy Clause.[4]  The Board knew or should have known that its Commissioner and employees were conducting investigations, as part of the commercial marijuana licensing process, that revealed, in this case, that Celesteva and its officers, were conducting business in violation of the Bank Secrecy Act and RICO, inter alia.  See Exhibit D.  The public records Plaintiff subsequently obtained from the Board and the Washington Secretary of State clearly state that Celesteva exists only as a commercial marijuana business and that the Board specifically inquired as to the source of funds from information the Board obtained from Celesteva's officers showing all funds originated with J.P. Morgan Chase and Bank of America and were used to finance an unlawful commercial medical marijuana enterprise.   Ref. Exhibits A, C and D.  The Board made itself a co-conspirator, under RICO, with Celesteva, and despite any other syntax, renaming the Board "Cannabis" confirms the Board's intent to operate in violation of the Supremacy Clause as an unlawful criminal cartel laundering money, receiving proceeds along with aiding and abetting Celesteva, Kirby, KP, Canopy and Tighe's criminal network. The Board implemented, authorized and supervised the commercial "Marijuana Unit," under Director Rebecca Smith, who approved, licensed and encouraged Defendants and others, to produce, manufacture, process, distribute and sell commercial marijuana under color or authority of state law.  Ref. Exhibit C (WSLCB Application Processing Report) .

---

[44] Washington Constitution, Art. I Sec.2 "The Constitution of the United States is the supreme law of the land."

III.

**FACTUAL ALLEGATIONS**

26.     Plaintiff incorporates by reference paragraphs 1 through 25, *supra*, and paragraphs

89 through 340, *infra*, including all attachments, affidavits and exhibits, without waiving

any claims or defenses, as though more fully set forth herein.

27.     On information or belief, or about April 14, 2014 Celesteva entered into an

agreement with Kirby, KP and Canopy to settle specific, legal claims pending against Kirby

by Celesteva LLC and his then live-in girlfriend, co-owner in Celesteva and now Co-

Defendant Smith. See Exhibit E.  Kirby, KP and Canopy determined the value of that claim

as $265,000.00, representing the same amount Kirby, KP and Canopy agreed to provide in

capital to Celesteva LLC – a $120,000.00 payment; waiver of $10,000  security deposit;

confer title to a BMW to Smith; costs for all outside contractor fees; an advance on wages

to Erwin and VanHoute from July through December 2014; and issue a release for

Celesteva's remaining board members from a personal, lease guarantee and then agreeing

to waive any claim against the board to reimburse Kirby "for whatever sums so advanced"

Kirby, KP and Canopy.  Id. at 1.

28.   On information or belief Celesteva's Board entered into a second settlement

agreement whereby Kirby and Canopy agreed to waive rent payments until Celesteva

generated profits and also agreed to waive any legal claims or pursue a lawsuit for rent "as

long as the Lease is in effect."  See Exhibit F(*attached copy signed by Daniel Kirby*).[5]

29.   On information or belief, Celesteva entered into a Lease Agreement with Canopy

---

[5] Celesteva's entire Board signed the Second Agreement and kept a copy in its management files that
VanHoute and Erwin reveal, disclosed and displayed to the Plaintiff on or about March 23, 2015.

on July 2, 2014, wherein Board members VanHoute, Erwin and Kirby signed as "Guarantors" who's liability will "be affected by" the prior settlement agreements.[6] See Exhibit G(Industrial "Lease" and WSLCB Lease Information Affidavit).[7]

30.   On information or belief Canopy waived a potential $50.00 late charge for other tenants within the compound at 50 W. Westfield, while increasing Celesteva's potential late penalty to $100.00 or 100% higher than other tenants who do not have Kirby sitting on their governing boards.

31.   On March 12, 2015 the Plaintiff entered a written Agreement with Celesteva after receiving a super majority vote and the signatures of three (3) members of Celesteva, including the binding manager VanHoute, (hereafter "Agreement").  See Exhibit H; ref. Exhibit A(Celesteva LLC Member Agreement ¶2b).  Kirby, as a Celesteva Member with 25% ownership, refused to sign the Agreement.

32.   On information or belief Celesteva agreed that "James VanHoute. . .(the 'President and General Manager') shall manage, control, and operate the business and affairs. . .without any further action or approval by the Members of the Board. . . and cause the business to be conducted in accordance with sound business practices, in a lawful manner. . ." Ref. Exhibit A:  Celesteva LLC Member Agreement at 2 (June 29, 2014).

33.   Celesteva granted the Plaintiff "the 'exclusive right to' receive a minimum 10% of the total purchase price resulting from **any** sale of [Celesteva]. . . payable only at the time of

---

[6] Kirby, James VanHoute and Erwin placed their initials adjacent to the term "settlement" that was scratched out triggering the prior settlement agreements' provisions against guarantor liability.
[7] Kirby misrepresented to Board "0 Percentage (%) Profit to Landlord") under oath or affirmation.

closing," extending out so "that if a Cooperating Agent, ('Secondary'), procures a buyer, the Client will pay the Agent 10% of the total sale price at closing . . ." Exhibit H.

34.  On information or belief, Kirby initiated a transaction to purchase and sell at least half of the assets of Celesteva on or about April 17, 2015 by tendering three (3) separate Cashier's Checks, drawn from a Bank of America Corporation account or accounts and issued to Smith, Erwin and VanHoute, in consideration of two (2) separate Settlement Agreements, the outstanding 75% ownership shares of Celesteva and conditioned on Smith, VanHoute and Erwin entering nondisclosure agreements.  Kirby then completed the transaction to purchase and sell the assets of Celesteva with James Mackey for an additional $150,000.00 on or about August 21, 2015.  See Exhibit I.  The completed transaction resulting in the final, total sale of Celesteva LLC, including its assets and security sold for a minimum total of $895,000.00.

35.  On or about March 13, 2015 the Plaintiff provided actual notice of potential purchaser No. 1 to Celesteva.

36.  On or about March 14, 2015 the Plaintiff provided actual notice of potential purchaser No. 2 to Celesteva.

37.  On or about March 14, 2015 the Plaintiff provided actual notice of potential purchaser No. 3 to Celesteva.

38.  On or about March 17, 2015 the Plaintiff provided actual notice of potential purchaser No. 4 to Celesteva.

39.  On or about March 17, 19, 20, 28, and 31, 2015; and on or about April 1, 3 and 8, 2015 Celesteva; Kirby; KP; Canopy; VanHoute and Erwin, (or alternatively at direction of Board

under color or authority of law), and intercepted, monitored, listened, used or recorded multiple oral and electronic communications of the Plaintiff by way of audio and video recording equipment located on the premises without the Plaintiff's consent. This conduct occurred in violation of 18 U.S.C. §2520, RCW 9.73.030, RCW 9.73.060, *inter alia*.

40.   On or about March 18, 2015 the Plaintiff received an offer to purchase Celesteva consisting of $150,000.00 down along with an exchange of real estate, plus a percentage of annual gross proceeds as a royalty from potential purchaser No. 5, (Mr. Brooks in Tacoma). Plaintiff provided actual notice of potential purchaser No. 5's offer to Celesteva in writing. See Exhibit J(*VanHoute/Celesteva's text encapsulated in yellow*).

41.   On or about March 19, 2015 the Plaintiff provided actual notice of potential purchaser No. 6 to Celesteva.

42.   On or about March 20, 2015 Celesteva tendered a written, counter-offer, (to potential purchaser No. 1), to sell the business entity and one of Celesteva's licenses for $200,000, or the business entity and all of Celesteva's licenses for "[$]330-350k." See Exhibit J (March 21, 2015).

43.   On March 20, 2014 VanHoute and Erwin instructed the Plaintiff to contact a previously interested party, identified by VanHoute as "Franz" who resided in Seattle, Washington, (potential purchaser No. 7), and the Plaintiff subsequently spoke with Franz who confirmed that his previously submitted offer of $275,000.00 remained available for Celesteva's acceptance.  Plaintiff then provided the substance of that discussion to Celesteva, to wit:  Potential Purchaser No. 7 tendered an existing offer of $275,000.00(USD).  Franz also stated that Kirby previously sabotaged that potential

16

purchase by misrepresenting his ownership share and ability to sell the business without

the acceptance or knowledge of the remaining board members.

44.   On or about March 22, 2015 Plaintiff received a call from "Nel Mason" with

"Mason Family Farms," who solicited the Plaintiff for services to identify potential investors

for her business located adjacent to Celesteva on the property belonging to and managed

by Kirby, Canopy and KP.  On information or belief there is no legal business entity in the

State of Washington by the name Mason Family Farms, nor is there such an entity with a

WSLCB License of any kind as of August 21, 2015. "Nel Mason" is actually Nelwyn Mason-

Tighe, Defendant Tighe's wife.

45.   On or about March 22, 2015 Plaintiff explained to Ms. Mason that so long as a

contractual relationship existed with Celesteva the Plaintiff could not engage in business

with Ms. Mason.  At that point a clicking sound emanated over the phone and Kirby

suddenly entered the conversation with Nel still on, and introduced himself before stating:

> . . .look Sam, just send us a proposal, she'll sign anything you
> want. The only thing we want is to make sure we don't lose the
> license. Nel's father wants out of the lease I have over him so
> she's looking for someone to give us $200,000 while she
> retains a majority voting share and reserving a gardener
> position for the father's kid, Randy.  I've got Building A over
> there, I'm sure you know I own all the buildings over there in
> Canopy Park, just as I own all of Celesteva.  Without me there
> is no Celesteva, but anyway, the father, Loren Mason, wants
> out of a lease with me.  Randy is his kid and also the master
> grower.  Loren would like a job reserved for him.  I have a
> construction engineer who designed all of Canopy Park and
> he's available to work up all the expansion plans since I own
> the adjacent land as well.

46.   Plaintiff was unaware that Kirby was monitoring, recording and listening in on

Plaintiff's conversation with Ms. Mason in violation of 18 U.S.C. §2511, 18 U.S.C. §2520 et

seq.,[8] RCW 9.73.030, RCW 9.73.060 and RCW 9.38.020, *inter alia*, and Ms. Mason never stated that Kirby was intercepting, using, recording, monitoring and listening to the conversation with the Plaintiff nor did the Plaintiff give consent to the use, interception, monitoring, recording or listening by Kirby.  See Awbrey v. Great Atlantic & Pacific Tea Co., 505 F. Supp. 604, 606-07 (N.D. Ga. 1980)(*plaintiff need only show by a preponderance that defendants "intercepted, disclosed or used' the plaintiff's 'wire, [electronic] or oral communications'" to recover damages*); e.g. Broadway v. City of Montgomery, 530 F.2d 657, 660(5th Cir. 1976)(*"intercept" is defined by §2520(4) to mean any "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device"*).

47.   When Plaintiff asked if a subsequent agreement would exist with Mason Family Farms or if it would it be with Kirby, KP and Canopy, another clicking sound emanated over the phone and Tighe then entered the ongoing conversation "hey Sam this is Dan Tighe, I represent the family and Kirby on this deal and ideally this is just, and I understand you want to avoid any conflict, so ideally you'd be working just for Mason Family Farms.  Nel will do whatever we want, and so will Loren if Randy is in agreement, but Randy wants to grow, he's been growing for years and fancies himself a master grower.  Send me over a proposal to canopypark@gmail.com and I'll review it and get back to you before tomorrow."  Plaintiff was unaware that Tighe was intercepting, using, recording, monitoring and listening to Plaintiff's conversation with Ms. Mason in violation of 18 U.S.C.

---

[8] "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate," including electronic communications, as §2520 was amended to include in 2012.

§2511, 18 U.S.C.§ 1341,  18 U.S.C. §2520 et seq., RCW 9.73.030, RCW 9.45.060, RCW

9.38.020, RCW 9.73.060, RCW 19.40.041, and RCW 19.86 et seq., and Ms. Mason never

stated that Tighe was intercepting, using, recording, monitoring and listening to the

conversation with the Plaintiff nor did the Plaintiff give consent to Tighe using,

intercepting, monitoring, recording or listening to the communication with Ms. Mason.

See Awbrey v. Great Atlantic & Pacific Tea Co., 505 F.Supp. 604, 606-07 (N.D. Ga. 1980);

e.g. Broadway v. City of Montgomery, 530 F.2d 657, 660(5th Cir. 1976).

48.   On information or belief and in violation of 18 U.S.C. §1343, Tighe produced and

transmitted multiple legal documents to the Plaintiff via email and by way of VanHoute,

Erwin and potential purchasers.  See Exhibit K (Email from Canopypark@gmail.com (March

23, 2015)(Tighe's attachment labeled "Generic Lease 12.10.14.docx")).  Plaintiff received a

confirmation email message from Tighe, who signed the email "DT," with the moniker "JR

Terrier" attributed to canopypark@gmail.com" to send the message.  Id.

49.   On or about March 23, 2015 the Plaintiff and Tighe discussed the Mason Family

Farms' proposal over the telephone when Tighe stated that Kirby refused to enter into the

proposed agreement with the Plaintiff.

50.   On information or belief, on or about March 24, 2015 Kirby and Tighe personally

delivered or caused the delivery of a fraudulently based eviction notice to Celesteva, *viz-a-viz* Erwin and VanHoute, when potential purchasers were visiting the physical location of

the business and other potential purchasers were submitting bids.  Tighe and Kirby, along

with who is believed to be Kirby's son, "Chaun," engaged in a verbal confrontation

threatening Celesteva member Brent Erwin with violence and abuse of process regarding

the existing terms under the settlement agreements.

51.   On or about March 27, 2015 the Plaintiff provided actual notice of potential

purchaser No. 8 to Celesteva.

52.   On March 30, 2015 during a telephone call with the Plaintiff, Kirby stated that he

owned "all of Celesteva, Canopy Park and everything around it, I'll do whatever I want with

my property," in violation of RCW 9.38.020, 9.45.060, and 19.86.   When Plaintiff reminded

Kirby of the settlement agreements, Kirby paused, calmed down and agreed that he "won't

do anything to compromise the sale until after April 3rd, but really that means April 5

because of the weekend. So I won't act on the eviction notice or intervene until then, just

make sure to send a copy of any offer to Tighe for me."

53.   On or about April 1, 2015 the Plaintiff provided actual notice of potential

purchaser No. 9 to Celesteva.

54.   On or about April 3, 2015 Mr. Peters, as a potential purchaser, submitted a written

"Letter of Intent" containing a proposed offer for a total purchase price of:  $360,000.00

($150,000.00 deposit in escrow, balance of $210,000.00 distributed per a repayment

schedule option within a 60 day interim period).  See Exhibit L (Letter of Intent).  Exercising

managerial control, Celesteva's President VanHoute signed the Letter of Intent on April 3,

2015, with Peters.  Ibid; ref. Exhibit A (Celesteva LLC Member Agreement ¶2b).

55.   On or about April 3, 2015 Plaintiff received a text message from VanHoute

expressed concern that Kirby would "fuck [ ] up" the sale to Peters, so he needed to get

Celesteva's remaining partners to approve the Peters' sale by a formal vote before Kirby

"has a chance." VanHoute claimed that he would only pay Erwin $5,000.00, Smith $15,000.00 and himself $15,000.00, but Smith rejected that distribution because of the value attached to existing legal claims she had over Kirby, KP and Canopy.

56.   On information or belief, on or about April 4, 2015 VanHoute claimed to Plaintiff that Celesteva accepted Peters' offer to purchase Celesteva for $360,000.00, (with $150,000.00 deposit in escrow), and submitted a draft Purchase of Business Agreement to Plaintiff where Peters took over management during a sixty (60) day interim period ending with the transfer of ownership to Peters alone, who would then tender the full remaining $210,000.00 balance. See Exhibit N. VanHoute's April 4, 2015 text message, (*Plaintiff subsequently verified via telephone with VanHoute*), stated  that Peters' offer received a super majority vote "75% approval" from Erwin, Smith and VanHoute. See Exhibits J.

57.   After communicating with VanHoute, on April 4, 2015 the Plaintiff subsequently received a telephone call from Kirby. Kirby claimed he was angry over the vote to accept Peters' offer and began to verbally harass and abuse the Plaintiff, insisting he would never pay the Plaintiff's commission, that he would "kill any deal," and "have someone kick your ass if I have to." Kirby tirade continued as he claimed he would do whatever it took for him to keep "Celesteva and its licenses" so he could "keep all the profit without failures like James and Brent. I already have a guy who can come in and grow for me. I don't reward failure." Kirby admitted he sabotaged several potential purchasers by demanding "$1.50 per square foot in rent" and that he "remain on any license" as a necessary condition for the sale of Celesteva, without the knowledge of the remaining members of Celesteva. Plaintiff stated to Kirby that the Plaintiff was obligated to inform Celesteva of Kirby's

21

intentional misconduct.  Kirby yelled at the Plaintiff "you fucking cocksucker, you're just like all the other goddamn lawyers in this world, I'd kill them all if I could and you too.  Fuck it, I'll just wait until they default, I've already started the eviction, so when they leave, I'll take possession.  The building's mine, the land's mine, the plants are mine and then both licenses will be mine. I won't spend a dime." Kirby terminated the call.

58.  On or about April 4, 2015 Kirby left a voice message for the Plaintiff stating that Kirby was the "only person in the end that, ah, can make that decision [to sell Celesteva]. . . ." See Exhibit Q (*Kirby Voice Message*).

59.  On information or belief, on or about April 4, 2015 Kirby approached Mr. Peters misrepresenting himself as "the only owner" of "Celesteva" offering to sell Mr. Peters all of the assets of Celesteva, and specifically demanding Peters remain silent on this arrangement to avoid paying the remaining Celesteva board members or the Plaintiff under the following conditions:

> i.     Mr. Peters pay Kirby a deposit of $100,000.00 as a pay-to-play fee;
> ii.    Kirby agreed to waive a $120,000.00 nonexistent debt that Kirby claimed Celesteva owed Kirby if Mr. Peters agreed to make Kirby a "1/3 partner" covering all future business under Celesteva's business license;
> iii.   Kirby agreed to repair the electrical issues and rebuild the premises at a discount, and then construct and complete new buildings within 2 months for Peters; and
> iv.    Kirby stated that he would reduce the total purchase price to $300,000.00 if Peters agreed to split Plaintiff's commission equally with Kirby or if Peters agreed with Kirby to avoid paying Plaintiff's commission entirely.

60.  On or about April 5, 2015 the Plaintiff received a call from Tighe who claimed that Kirby "chewed [his] ass out and threatened to fire [him]." Tighe explained that he was

writing an independent purchase agreement to submit to Peters so that Celesteva, KP, Canopy and the remaining partners "all benefit," but ensuring that Kirby received $100,000.00. On information or belief, Tighe explained the bases for Kirby's disdain for anyone in the legal profession as the Hazelrigg bankruptcy case, and then Tighe volunteer information regarding Kirby's vices (*particularly mentioning Kirby's requirement that Tighe obtain underage children for Kirby to engage in sex with while they were in foreign countries, and also secure Kirby prostitutes and escorts in Palm Springs, California as condition for Tighe's continued employment with Kirby, KP and Canopy*).

61.   On information or belief, on or about April 6, 2015, Plaintiff was informed of further misconduct by Kirby by Peters, and Plaintiff relayed that information to VanHoute verbally and via text message. See Exhibit Q (*Transcript Peters' Voice Message*). After VanHoute spoke with Peters and Plaintiff, Peters tentatively agreed to proceed under the terms of the super majority vote by Celesteva since VanHoute claimed all that remained was to secure the necessary signatures on the purchase agreement by Erwin and Smith.

62.   On information or belief, on April 6, 2015 Kirby and Tighe made several statements disparaging the Plaintiff to Mr. Peters, VanHoute, Mason Family Farms LLC, and an unknown party, John Doe, that Plaintiff was a "convicted criminal" who cannot be trusted and that Kirby will never pay Plaintiff any commission for his work.

63.   On information or belief, on or about April 8, 2015 several major issues arose at the physical location of Celesteva. Canopy and Kirby's engineer, electrician and/or fire alarm contractors installed equipment that caused repeated instances where the fire department responded to the premises daily. The electrician installed too small of gauged

wire, and too small electrical breakers and the fire alarm contractor failed to identify or

locate the problem causing the alarm to sound daily causing the fire department to

dispatch repeatedly. Kirby acknowledged the pre-existing problem at Celesteva and Kirby

promised to repair the issues at no cost to Peters.

64. On or about April 8, 2015 the Plaintiff received a call from Tighe who explained

that Kirby will block any purchase agreement unless Kirby received $180,000.00, (*a*

*fictitious debt amount that Tighe asserted as a cover for previous "pay-to-play" payment*

*assertion of Kirby*), and that Kirby demanded Plaintiff's resignation to avoid paying

Plaintiff's commission, butTighe claimed he thwarted that requirement "for the time

being." Tighe claimed Kirby was "pissed" that under the Peters' offer the majority voted to

accept, Kikrby takes the same equal share as the other partners because Kirby, KP and

Canopy were the only true investors. Plaintiff told Tighe that if Kirby has a valid debt it

should present to Celesteva as part of the distribution plan but that issue is not an issue

Plaintiff was hired to address.

65. On information or belief, on or about April 11, 2015 the Plaintiff and Mr. Peters

received an email from VanHoute, (celesteva@live.com), that included an unsigned copy of

the purchase agreement where Kirby Properties LLC claimed to be the "Seller" and

"Owner" of Celesteva LLC, "a Recreational Marijuana Producer and Processor," for

$355,000.00. See Exhibit O (*PSA- Celesteva (KP to Peters)*).

66. On information or belief, on April 15, 2015 Kirby; KP; Canopy; VanHoute and Tighe

held a pre-scheduled meeting at the Little Creek Casino in Shelton, Washington with Mr.

Peters to finalize the terms for the purchase agreement. Tighe presented a corrected copy

of the KP PSA version that Tighe prepared in contravention to the Peters' purchase

agreement Celesteva already accepted by a majority vote.

67.   On or about April 17, 2015 Kirby and KP, (as competitors of Celesteva and

Plaintiff),  submitted a signed purchase agreement to Peters, wherein Kirby demanded

$355,000.00 from Peters, of that Kirby required a "$200,000.00 deposit in escrow," an

executed Promissory Note for the remaining $130,000.00, plus pay an additional

$15,000.00 for rent and tender a $10,000.00 security deposit, and requiring Peters to

"work" for Kirby and KP "to complete the current marijuana crop," under the

representation that Kirby Properties LLC was the "Seller" and "Owner" of Celesteva LLC, "a

Recreational Marijuana Producer and Processor," where "Seller is the absolute beneficial

owner of the Assets" with the "full legal authority to enter into and exercise its obligations

under this agreement." See Exhibit P.

68.   On or about April 24, 2015 Plaintiff received a forwarded copy of an email that

Peters sent to Kirby and Celesteva, wherein Mr. Peters revoked and terminated all offers to

purchase Celesteva based on Defendants' misconduct, including Tighe and Kirby's

disparaging and defamatory remarks "in multiple public places," stating the Plaintiff is a

convicted "criminal" and "someone who cannot be trusted," *inter alia*, an calling Plaintiff a

thief who "stole" from Celesteva. Ref. Exhibit K (Peters' Email) and (Kirby Email).

69.   On or about May 8, 2015 Plaintiff received correspondence from the Washington

State Bar Association stating Daniel "Tighe was disbarred effective October 14, 1991. . .[it]

is a criminal act in Washington [for Tighe to practice law] and in some instances it is a

violation of the Washington Consumer Protection Act." Ref. RCW 9.04.040; 21.20.010 et

seq.; 19.86.020; 2.48.180(2); 19.86.030 and 19.86.093.

70.   At all times material hereto, the Defendant's conduct, as described herein, took

place within the four (4) year period preceding the filing of this action.

71.   On information or belief Kirby, Tighe, VanHoute and Erwin asserted that the

operations of Celesteva were legal to induce a performance contract with Plaintiff when

they knew or should have known that was a false assertion and a fraudulent

misrepresentation in violation of RCW 9.04.040, 21.20.010 and 19.86.020.

72.   On information or belief Celesteva falsely advertised, with the intent to sell

Celesteva, via telephone, email, Craigslist and other internet websites, to induce members

of the public to enter into an agreement for that purchase and acquire title or an interest in

Celesteva, statements of fact that were untrue, deceptive or misleading, to wit:  Celesteva

was a legal business and that Defendants will sell the business in its entirety to a member

or members of the public that placed the highest bid, matching $275,000.00 or more, and

Kirby and KP were the only legal owners of Celesteva, in violation of RCW 9.04.040.  Ref.

<http://www.jlaforums.com/viewtopic.php?t=306041874> ("Business for sale: Celesteva

LLC" for "$350,000.00," that was "Posted Fri January 30, 2015 11:48 p.m." by "James"

VanHoute); see also Exhibit L (forwarded email from VanHoute sent from Celesteva's

Craigslist account, and WSLCB Request for Additional Documents sent via email to

Defendants Kirby, Smith, VanHoute and Erwins' email accounts).

73.   On information or belief Celesteva; Kirby; KP; Tighe; Canopy; VanHoute; Erwin and

Smith entered into an agreement with each other to contract with Plaintiff where

Defendants promised to pay the Plaintiff for services and labor, (*inducing Plaintiff to enter a written agreement with Defendants and perform*), that Defendants knew or believed were false as Defendants had no intention of honoring their promise to pay Plaintiff and had no intention of paying the Plaintiff for his services, and Defendants intended to use the Plaintiff's services provided for VanHoute, Erwin, Smith and Kirbys' individual profit, but also for the benefit of Canopy, KP, Celesteva and Kirbys' organizational profit as a way to continue with a fraudulent, unlawful artifice, scheme or device to decrease competition; create a monopoly; restrain trade; defraud future investors; and eventually defraud Smith, VanHoute and Erwin from ownership, and gain additional profit, as a pattern of unlawful activity, and Defendants VanHoute, Erwin and Smith failed to disclose their intent not to pay the Plaintiff even after receiving the benefit of his services and compensation from Kirby, where Plaintiff relied on Defendants' misrepresentations or omissions that caused an injury to the Plaintiff.  Defendant's misrepresentations or omissions were in violation of RCW 9.04.040; 19.86.020; 19.86.050; 19.86.060 and 21.20.10, and constitutes "promissory fraud" as set forth in Blanton v. Mobil Oil Corp., 721 F.2d 1207, 1218 (9th Cir. 1983)(*internal citations omitted*); e.g. State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., 553 P.2d 423 (1976)(*misrepresentation of material terms and failure to disclose material terms violates the CPA*); Panag v. Farmers Ins. Co. of Wash., 204 P.3d 885 (200()(*even accurate information is deceptive "if there is a representation, omission or practice that is likely to mislead"*).

74.   On information or belief in August 2014 Kirby, VanHoute, Erwin, Smith and Celesteva employed Mosaic Insurance Alliance to further carry out their unlawful activity

and racketeering enterprise, whereby Kirby, KP and Canopy withdrew necessary funds from Bank of America accounts and deposited those funds either in VanHoute's JP Morgan Chase account or directly to Mosaic Insurance Alliance at the direction, guidance or approval of Board. Ref. Exhibits A- D and I.

75.   On information or belief, after Kirby delivered or caused the delivery of three (3) Cashier's Checks to VanHoute, Smith and Erwin, for consideration valued at $745,000.00, (Kirby, KP and Canopy received value from intangibles), then Kirby received $150,000.00 from a "Secondary" buyer, James (Chaun) Mackey, (who may be a relative of Kirby), who purchased a 50% ownership share in Celesteva. See Exhibit I.  Kirby; KP; Canopy; Tighe; Erwin; Smith; VanHoute and Celesteva violated the WCPA by failing to disclose any information regarding the sale to KP, Canopy, Kirby and Mackey, in violation of the WCPA and furtherance of their pattern of illegal activity. State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., 553 P.2d 423 (1976)(*misrepresentation of material terms and failure to disclose material terms violates the CPA*); Panag v. Farmers Ins. Co. of Wash., 204 P.3d 885 (200()(*even accurate information is deceptive "if there is a representation, omission or practice that is likely to mislead"*).

76.   When Congress enacted the Controlled Substances Act of 1970, as Title II of the Comprehensive Drug Abuse Prevention and Control Act, it declared that "the traffic in controlled substances flows through interstate and foreign commerce." 21 U.S.C. § 801(3).

77.   Congress defined marijuana as a dangerous, Schedule I drug, and made the manufacture, distribution or possession of marijuana a criminal offense, unless part of a

Food and Drug Administration research study.  Ref. 21 U.S.C. §§ 812(c); 823(f); 841(a)(1); and 844(1).

78.  Penalties for violating federal marijuana production laws are severe, ranging from 5 years, to 20 years, to life imprisonment.  § 841(b)(1)(A) (*first time offender producing 1000 or more plants 10 years to life*); §841(b)(1)(B) (*5 to 40 years imprisonment for growing 100 or more marijuana plants*); and § 841(b)(1)(C) and (D)(*up to 20 years in prison for the cultivation of less than 100 marijuana plants*).

79.  Congress made it a criminal act to possess "any equipment, chemical, product or material" with the intent to produce, sell or distribute marijuana.  § 843(a)(6).

80.  The CSA prohibits the use of the mail, telephone, email or any other "communication facility" in furtherance of the manufacture or sale of marijuana, including the use of the internet to advertise.  §§ 843(b) and 843(c)(2)(A).

81.  Reinvesting the proceeds from marijuana operations and facilitating a financial transaction involving funds derived from manufacturing and selling marijuana is a crime. 21 U.S.C. § 854(a) and 18 U.S.C. § § 1956, 1957, 1960.  Celesteva and Kirby reinvested the proceeds from Celesteva's marijuana operations with funds derived from marijuana, by facilitating a financial transaction with Stephanie Bloomfield, in furtherance of the manufacture and sale of marijuana.  See Exhibit S (Bloomfield/GTH Letter).

82.  Congress enacted specific federal criminal provisions prohibiting the lease or rent, or to manage, maintain or control a place where marijuana is manufactured or sold, or maintaining such a business within 1,000 feet of a fuel station that sells fuel to commercial vehicles.  21 U.S.C. §856 and 849.

83.   It is a violation of federal law to employ or lead a group of five or more people who commit a continuing series of federal crimes.  §848. Kirby, Board and Washington employ or lead more than five people who commit a continuing series of marijuana related offenses.

84.   RICO defines violations of the CSA, including marijuana, as "racketeering activity." 18 U.S.C. § 1961(1)(D).   Board; Washington; Celesteva; Mosaic; Kirby; Tighe; VanHoute; Erwin; Smith; KP; Mackey and Canopy engaged and continue to engage in commercial cultivation and sale of marijuana as a criminal enterprise, or conspired or agreed to engage in commercial cultivation and sale of marijuana.  Ibid, see also, § 1962(c) and (d)(subjecting violations to civil and criminal liability); ref. Exhibits A, H  and P (*KP-Peters' PSA signed by Kirby declaring he possessed "current marijuana crop" as the only "Seller" and "Owner" of Celesteva LLC, "a Recreational Marijuana Producer and Processor," where "Seller is the absolute beneficial owner of the Assets" with the "full legal authority to enter into and exercise its obligations under this agreement"*).

85.   On information or belief Kirby; KP; Celesteva; Mackey; Canopy; VanHoute; Erwin; Smith and used the banking services from J.P. Morgan Chase, Timberland Bank and Bank of America, with the approval and knowledge of Board and Washington, in violation Bank Secrecy Act, (31 U.S.C. § 531-5314e; 5316-5331; 5332e; 12 U.S.C. 1829b, 1951-1959; 31 CFR Chpt X and Part 103), formerly the Currency and Foreign Transaction Act of 1970, and RICO.  See Exhibits C and D(*WSLCB License Application and Defendant's Financial Information*).  See Exhibits A, C and D.

86.   Plaintiff relied on the representations, memoranda and testimony of the United States and the State of Washington that engaging in business with the Defendants was a permissible, legal endeavor.[9]

87.   On information or belief the Board; Washington; Kirby; KP; Celesteva; Canopy; VanHoute; Erwin and Smith, under color or authority of law, engaged in money laundering; insurance fraud; promissory fraud; wire fraud; bank fraud; securities fraud; obtaining signatures by threat or duress; possession, distribution and manufacturing of controlled substances; unlawful wiretapping; threats of violence and unlawful practice of law, *inter alia*, as alleged herein.

88.   Washington and the Board organized an illegal drug cartel, encouraged participation in the cartel by members of the public, participates as both cartel leader and member while authorizing the criminal acts of the Defendants as co-members in racketeering enterprises by licensing Celesteva to manufacture, distribute and sell marijuana in violation of federal law and deprive the Plaintiff of his civil and constitutional rights.

---

[9] Ref. United States Department of Justice Marijuana Enforcement Policy, http://www.justice.gov/opa/pr/justice-department-announces-update-marijuana/enforcement-policy; e.g. Memorandum from David W. Ogden, Deputy Attorney General, to Selected United States Attorneys, re Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana, (October 19, 2009); Memorandum from James M. Cole, Deputy Attorney General, to United States Attorneys, re Guidance Regarding the Ogden Memo in Jurisdictions Seeking to Authorize Marijuana for Medical Use, (June 29, 2011); Memorandum from James M. Cole, Deputy Attorney General, to All United States Attorneys, re Guidance Regarding Marijuana Enforcement, (August 29, 2013); Consolidated and Further Continuing Appropriations Act, 2015, H.R. 83, 113th Cong. § 538 Joint Statement Washington Governor Inslee and Washington Attorney General Ferguson, http://www.atg.wa.gov/news/news-releases/joint-statement-gov-inslee-and-ag-ferguson-regarding-update-ag-eric-holder, (August 29, 2013);  and Written Testimony of Washington Governor Inslee and Washington Attorney General Ferguson, http://governor.wa.gov/sites/default/files/documents/testimony_20130910.pdf, (September 10, 2013).

IV

## CAUSES OF ACTION

**CLAIM I:   (RICO) - RACKETEERING ENTERPRISES, PREDICATE ACTS AND PATTERN**

89.   Plaintiff incorporates by reference paragraphs 1 through 88 and paragraphs 133

through 340, including any attachments, citations and exhibits, without waiving any

defense or claim, as though fully set forth here in Section IV Causes of Action Claim I:

RICO- RACKETEERING ENTERPRISES, PREDICATE ACTS AND PATTERN, *infra*.

90.   On information or belief, Celesteva; Board; GTH; Washington; Mosaic; KP; Canopy;

and DAK constituted various "enterprises" seeking economic or commercial gain from

illegal "racketeering activity" they, individually or jointly, implemented; engaged,

participated or involved in; conducted, executed and organized by individual Defendants

Kirby; Tighe; Smith; Erwin; VanHoute; Mackey and Bloomfield, along with individual

defendants Rushford, Kurose and Hauge, that were sanctioned, enforced and defended by

Ferguson, whereas the result was the deprivation of Plaintiff's civil and constitutional

rights, loss of earnings, enslavement or indentured servitude under color of law and lost

profits and property, as discussed herein.

91.   On information or belief, Washington; Board; officials Ferguson; Rushford; Kurose

and Hauge, individually and jointly, unconstitutionally sanctioned, regulated and licensed

commercial marijuana operations throughout the State of Washington.  These Defendants

continue to sanction, regulate and license commercial marijuana operations in violation of

the U.S. Constitution and the laws thereunder, throughout the State of Washington.

Defendants Washington, Board, along with officials Ferguson, Ruthford, Kurose and

Hauge, authorized the illegal conduct by the creation of a statewide, illegally created

32

cartel "enterprise" that "legalized," by state decree the malfeasance of the individual

Defendants while failing to provide any mechanism to preserve and protect equally the

Plaintiff's constitutional rights, including the right to employment, familial association,

society, contract and due process, by first inviting members of the public to participate

while encumbering any market participant with the threat of federal criminal sanctions,

applied under the lens of selective prosecution against those unable to financially bear the

cost of doing business with Washington or who are subsequently deprived of property or

property interests by licensees and challenge the legitimacy of the commercial marijuana

regulatory scheme, in violation of 42 U.S.C. §1981; 1983; 1985; 1986, 1988, *inter alia.*

92.   On information or belief Kirby, Erwin, VanHoute and Smith agreed and conspired with

each other, (and then hired Tighe to draft or review all necessary and related documents),

under color or authority of state law, to design, build, construct and manage a commercial

marijuana business and a marijuana business park situated at:  50 W. Westfield Court

(*formerly identified as 450 W. Dayton Airport Road*); Shelton, Washington 98584 or

Celesteva's base of operations, to wit: Unit D.[10]  Ref.  Exhibits A, C, D, G, I, L and R.

93.   On information or belief, all money, funds and financing for Celesteva originated from

the bank accounts of Kirby, KP, Canopy and VanHoute, where Kirby used DAK, KP and

Canopy, individually and jointly, as criminal enterprises to derive profit from commercial

marijuana, commit wire, mail and tax fraud.  Ref. WSLCB Application License No. 413626.

---

[10] Ref. WSLCB GPS Coordinates For Distance Measurements of Marijuana License Applications - Property Boundaries:  N47° 15.301 W 123° 09.325 by N47°15.250 W123° 09.325 by N47° 15.301 W123°09.569 by N47°15.300 W123° 09.566.

94.   On information or belief Kirby, KP, Tighe, VanHoute, Smith, Mackey, Canopy

operate or operated Celesteva's Tier 2 Marijuana Production and Processing facility at

50 W. Westfield Court; Shelton, Washington, when that location also includes two (2)

separate Tier 3 Marijuana Production businesses, (Hemp Industries International

License #413013 and PRANA License #416737); and four (4) additional Tier 2 Marijuana

Production facilities, (Evergreen GroPro License #416412; No Bad Days Ranch License

#416365; Stone Age Gardens License #413655; WholeCannabis License #416644), all

are adjacent to the State and Mason County Road Maintenance yard; across the street

from the Airport; near a public high school, a commercial vehicle fuel station and the

Washington State Highway patrol training facility.  At this one location, Kirby, KP and

Canopy exercise dominion or control over 100,000 square feet of available marijuana

plant canopy as a commercial marijuana facility authorized by Board and Washington.

95.   In multiple instances beginning in March and ending in April 2015, Kirby; Tighe; KP;

Canopy; VanHoute; Erwin and Celesteva claimed to Plaintiff and prospective purchasers

that Tighe was their "lawyer" and "attorney," with Tighe claiming to be their "attorney"

on at least three (3) separate instances, (when Tighe knew he was disbarred by

Washington for tax fraud conviction), in violation of RCW 2.48.180(2)(a); RCW

21.20.010 et seq.; 19.86.020; 19.86.030 and 19.86.093; e.g. State v. Ralph Williams'

N.W. Chrysler Plymouth, Inc., 553 P.2d 423 (1976)(*misrepresentation of material terms

and failure to disclose material terms violates the CPA*); Panag v. Farmers Ins. Co. of

Wash., 204 P.3d 885 (200()(*even accurate information is deceptive "if there is a

representation, omission or practice that is likely to mislead"*). At all times relevant to

34

this action, on information or belief, Defendants used the U.S.P.S., the phone and the internet to submit documents to the Board and Washington necessary to initiate and operate a marijuana business. Ref. Exhibits A, C, D, L and M.

96.  On information or belief, on or about October 30, 2014 Celesteva; Kirby; Erwin; VanHoute and Smith successfully passed the WSLCB Final Site Inspection and on November 24, 2014 the Board, by way of Wambold and Director Rebecca Smith, granted two (2) separate, state issued commercial marijuana licenses that were mailed directly to these Defendants. Id.

97.  Kirby purchased the "real property under a different entity, Canopy. . .for $159,000.00" on or about March 3, 2014 from "DAPBP, LLC" executed by "RGD LLC" and "Douglas R. Bloom," for the express purpose of developing, building, constructing and operating a marijuana business. See Exhibit R (*Statutory Warranty Deed-Mason County Recorder 2022057*) and (*WSLCB Investigator Initial Interview Notes*, at 3 (February 26,2014)*"Daniel Kirby is purchasing the real property and will be leasing to the applying LLC" for $159,000.00, plus $325,000.00 in start-up costs, with the source of all funds avowedly coming from the "Personal bank account" of "Daniel Kirby" "Kirby Properties" "Canopy Park" and VanHoute*); ref. WSLCB Application Processing Report.

98.  Plaintiff confirmed with Douglas R. Bloom via telephone in 2015 that Kirby purchased the property located at 50 W. Westfield for $159,000.00 for the express purpose of marijuana operations, but Plaintiff learned from Bloom that Kirby intended to use KP and Canopy to hide that purpose from banks and tax authorities.  On information or belief supplied by Smith to Plaintiff, Kirby, KP, DAK, Canopy and

Celesteva finalized and submitted all outstanding tax reports showing zero taxes owed in violation of 26 U.S.C. §§ 7201, 7206 and 7207 in August 2015 with Smith's assistance.

99.   On information or belief, on April 14, 2014 Kirby; KP; Canopy; VanHoute; Erwin and Smith entered into a written agreement, drafted by Tighe, "to keep all information concerning Celesteva LLC totally confidential and at no time [disclose] any such information." See Exhibit E at 2.

100.   Kirby, KP and Canopy agreed "to pledge and hold up to $120,000.00 for the exclusive use to meet the Board's licensing requirements and complete the building being leased to Celesteva without any obligation on" Celesteva, Erwin, Smith and VanHoute "for whatever sums so advanced," along with Kirby, KP and Canopy's waiver of a "$10,000.00" security deposit and Kirby, Erwin, VanHoute and Smiths' personal guarantee for a "$450,000.00 . . . 5 year commitment." Id. at 1.

101.   On information or belief, Kirby, KP and Canopy collected and withdrew $120,000.00 from Bank of America Corporation and deposited $120,000.00 into VanHoute's JP Morgan Chase account to purchase marijuana and marijuana equipment and supplies in violation of the Bank Secrecy Act, (31 U.S.C. § 531-5314e; 5316-5331; 5332e; 12 U.S.C. 1829b, 1951-1959; 31 CFR Chpt X and Part 103), formerly Currency and Foreign Transaction Act of 1970, and RICO.

102.   On information or belief Kirby, KP, Canopy, Smith, Erwin and VanHoute received substantial increases and ascensions to their wealth as income related to the Celesteva project in 2013 and 2014, yet they failed to report that income with the U.S. Treasury-IRS or Washington Department of Revenue.  VanHoute claimed to Plaintiff that

VanHoute personally paid $10,000.00 cash VanHoute received from Kirby and gave that amount to Easy Trim LLC at a Cannabis Expo in Seattle for marijuana processing equipment:  Marijuana Bud Trimming Machine –Satellite Drone, and failed to report that money as income for that tax year and used that cash to avoid Bank Secrecy Act reporting requirements.

103.  VanHoute reported to WSLCB, "under penalty of perjury," that it would take "$370,000.00" in "start-up costs," to bring Celesteva into operation in his declaration to the WSLCB on July 21, 2014, and VanHoute further claimed "[m]y non-financial contributions are extensive. . .I manage every aspect of Celesteva. . . I have provided large amount of labor," and on information and belief, VanHoute, Kirby, KP, Canopy and Celesteva failed to report that service as Gross Income in 2014 in violation of IRS Code §§61 and 63 as of the date of this Complaint.  Ref. Exhibit D and IRS Rev. Ruling 79-24 (Fair Market Value of services performed as barter is gross income and must be reported).

104.  On information or belief, throughout 2014, Smith issued checks and cash drawn on and from Kirby, KP and Canopy bank accounts to Tighe, Erwin and VanHoute as income for work and services to bring Celesteva into operation.  On information or belief, Erwin and VanHoute failed to report income received from Kirby, KP and Canopy on their 2014 IRS and Washington State Department of Revenue tax filings.

105.  On or about May 23, 2014 Celesteva; VanHoute; Smith; Erwin and Kirby submitted a sworn, written application to the State of Washington seeking a marijuana license, with Canopy, Daniel Kirby dba Daniel Kirby Sole Proprietor and KP agreeing to aid and

abet, and then conspiring with Celesteva in the distribution, sale and manufacture of

marijuana by submitting agreements, financial documents and contracts in support, in

violation of <u>Bank Secrecy Act</u>, (<u>31 U.S.C. § 531-5314e; 5316-5331; 5332e; 12 U.S.C.

1829b, 1951-1959; 31 CFR Chpt X and Part 103</u>), formerly <u>Currency and Foreign

Transaction Act of 1970</u>, and <u>RICO</u>. <u>Ref</u>. <u>WSLCB License 413626</u> (Application).

106.  On or about July 2, 2014 Celesteva; Canopy; Kirby; Erwin and VanHoute entered

into a commercial Lease agreement to produce, distribute and sell marijuana on the

premises identified herein, *supra*, and Kirby, Erwin and VanHoute avowed to remain

personally liable for the debt under the lease, excluding the terms set forth in the

Settlement Agreement-Smith and Settlement Agreement-Celesteva, as discussed *infra*.

<u>See</u> <u>Exhibit G</u>,[11] (referencing <u>Exhibits E and F</u>).

107.  On information or belief, in June 2014, Kirby and his then girlfriend and Celesteva

partner Smith, terminated their personal relationship when Smith claimed that Kirby

was allegedly having a sexual relationship with Randy Mason's wife.  Smith gave Kirby a

notice of separation as Kirby, KP and Canopy's bookkeeper and notice of a pending

lawsuit for abuse, *inter alia*, and Kirby agreed to settle her claims totaling $250,000.00

by way of Canopy "sign[ing] the Lease as it has been written," for a "$450,000.00 . . .5

year commitment" by Celesteva and promising to retain Smith as a board member and

pay her 25% of all Celesteva's profits in the future so long as Smith agreed not to

disclose the paramour relationship with Ms. Mason or Kirby, KP and Canopys' unlawful

---

[11] Washington Notary Ly Huong Ngoc Tran, employed at the Bank of America Black Lake Branch, called the Plaintiff from (360) 252-2385 and confirmed by reference to her receipt book that Kirby, Canopy, VanHoute and Erwin presented government issued identification and signed the document before Ms. Tran affixed her signature onto

financial operations Smith gleaned from the multiple sets of his financial books Tighe and Kirby maintained at multiple locations. Ref. Exhibits E, F, G, N, O and P.

108.   On information or belief Kirby, KP, Tighe, Canopy and VanHoute entered into an agreement to defraud by artifice, scheme or design and conspired to extort $100,000.00, and later $180,000.00, from Peters, with Kirby and Tighe implementing the attempted extortion in violation of 18 U.S.C. §1343 et seq., 18 U.S.C. § 1951 et seq. or 18 U.S.C. §371 et seq.

109.   On or about April 4, 2015 Kirby spoke over the telephone and demanded that Peters pay Kirby $100,000.00 as a privilege of doing business with Kirby, then when that failed Kirby threatened to kill the Plaintiff and any other lawyer in his path in violation of 18 U.S.C. §1951 et seq. or 18 U.S.C. §371 et seq.

110.   On or about April 4, 2015 Kirby called the Plaintiff's telephone and left a voice message regarding the pending sale of Celesteva and stated "if you want to make the sale out at Canopy Park. . .it's just not getting done having these other people involved, um, really there's only one person in the end that, ah, can make that decision out [at Celesteva] and that's me. . . ." See Exhibit Q(Kirby Transcript).  On information or belief, Kirby knew his statement to Plaintiff over voice mail on April 4, 2015 was false and in violation of 18 U.S.C. §1343 et seq. and RCW 9.38.020, 9.45.060 and 19.86 et seq., as at that time Kirby only owned a 25% share of Celesteva. Id.

111.   On information or belief, on or about April 6, 2015, after VanHoute claimed Celesteva voted and agreed to accept Peters' offer and sign a purchase agreement, Mr. Peters called the Plaintiff and reported that Kirby telephoned him and demanded an

additional $100,000.00 as the sole owner of Celesteva or Kirby would void any

Celesteva agreement unless that amount was paid to Kirby.  Peters' voice mail stated

that Kirby was "trying to hold me up. . .its ah pretty underhanded thing there and I'm

going to explain it to" VanHoute, (*Kirby knew he was not in control of Celesteva and*

*lacked the authority to solely enter into an agreement for the sale of Celesteva*), and

Kirby's conduct constituted violations of 18 U.S.C. §1951 et seq. or  18 U.S.C. §371 et

seq., and 18 U.S.C. §1343 et seq.; RCW 21.20.010;  RCW 9.38.020; RCW 9.45.060 and

RCW 19.86 et seq. by Kirby, KP and Canopy.  See Exhibit Q (Peters' Transcript).

112.   On or about April 8, 2015 Tighe spoke with the Plaintiff over the telephone, as

Kirby's lawyer, and stated that Kirby would terminate any deal for the purchase of

Celesteva unless Kirby was paid $180,000.00 outside of the purchase price Celesteva

previously agreed on by majority vote of the remaining board members of Celeteva.

On information or belief, Tighe and/or Kirby knew or should have known this conduct

was in violation of 18 U.S.C. §1343 et seq., 18 U.S.C. § 1951 et seq. or 18 U.S.C. §371 et

seq., and  RCW 21.20.10; RCW 9.38.020; RCW 9.45.060 and RCW 19.86 et seq.

113.   On or about April 17, 2015 VanHoute and Plaintiff spoke over the telephone

where VanHoute stated that Kirby, Tighe, KP, VanHoute and Canopy threatened ,

coerced or deceived Erwin and Smith into affixing their signatures, relinquishing their

ownership shares in Celesteva to hide and eliminate the Settlement Agreements from

any potential purchaser; to defraud the Plaintiff; to hide unlawful activity; to decrease

competition resulting from any purchase apart from Kirby, KP and Canopy and avoid

payment of Plaintiff's commission while obtaining sole ownership and control over

Celesteva.  On information or belief, this conduct was in violation of <u>RCW 19.86.030,</u> <u>19.86.050 and 19.86.060</u>. and <u>RCW 9A.60.030</u> (*obtaining a signature by deception or duress with the intent to deprive or defraud is a Class C Felony*).

114.  On August 23, 2015, during a telephone call with Smith, Smith confirmed to Plaintiff that on or about April 15, 2015 VanHoute presented nondisclosure agreements for the purpose of hiding Kirby, KP, Tighe, Canopy and VanHoute's unlawful conduct, and VanHoute also presented change of ownership documents drafted by Tighe and issued to VanHoute, Smith and Erwin individually.  Smith claimed that, on or about April 20, 2015, in exchange, Kirby, KP and Canopy caused VanHoute to deliver three (3) individual Cashier's Checks, drawn on Bank of America Corporation, to VanHoute, ($15,000.00); Erwin ($15,000.00) and Smith ($15,000).  On information or belief Kirby, KP, Tighe, Canopy, Smith, Erwin and VanHoute knew or should have known this conduct was in violation of the <u>Bank Secrecy Act</u>, (<u>31 U.S.C. § 531-5314e; 5316-5331;</u> <u>5332e; 12 U.S.C. 1829b, 1951-1959; 31 CFR Chpt X and Part 103</u>), formerly <u>Currency</u> <u>and Foreign Transaction Act of 1970</u>, and <u>RICO</u>.  <u>Ref</u>. <u>WSLCB Change of Ownership</u> (August 21, 2015).

115.  On July 30, 2015 Plaintiff obtained a copy of Celesteva's Business License information, from the State of Washington, stating that the new purchaser of Celesteva LLC and the exclusive "Governing" person for Celesteva is "Daniel A. Kirby," holding the following licenses:  "Marijuana Processor" and "Marijuana Producer Tier 2".  <u>See</u> <u>Exhibit</u> <u>I</u>; <u>c.f.</u> <u>Exhibit A</u> <u>WBLS License Celesteva LLC</u> (July 12, 2014)("*Governing People Brent Erwin, Daniel A. Kirby, James VanHoute, Nicole Smith*").

116.  On information or belief, on or about August 21, 2015 Kirby reported to WSLCB that VanHoute, Smith and Erwin "are leaving" Celesteva' Board, and that "James (Chaun) Mackey purchased a 50% ownership share in Celesteva for "$150,000.00." See Exhibit I (WLSCB Change of Ownership).

117.  On information or belief, James Mackey used funds derived from Timberland Bank (CM Investment 45 LLC), in violation of the Bank Secrecy Act, (31 U.S.C. § 531-5314e; 5316-k5331; 5332e; 12 U.S.C. 1829b, 1951-1959; 31 CFR Chpt X and Part 103), formerly Currency and Foreign Transaction Act of 1970, and RICO. Ref. Exhibits D and I.

*Mosaic*

118. On information or belief, on or about August 14, 2014 Kirby, Celesteva, VanHoute, Erwin and Smith entered into an agreement with Mosaic in furtherance of the unlawful marijuana business by insuring the business against loss as required by WAC 314.55.082.  See Exhibit B (Certificate of Liability Insurance #CL1481402131).

119.  On information or belief Mosaic Insurance Alliance is not registered with the Washington Insurance Commissioner as an insurance company.  Mosaic and Celesteva provided documents to WSLCB on August 14, 2014 falsely certifying that "Lloyds of London" is the "INSURER(S) AFFORDING COVERAGE," in violation of RCW 48.06.190 and 18 U.S.C. §1343.  Ibid; c.f. Exhibit J (Lloyd's of London Attorney Email).

120.  Henry L. Feuerzeig, Lloyd's of London U.S. Virgin Islands General Counsel and Stephen G. Knott, Lloyd's of London Litigation Coordinator emphatically stated to Plaintiff, via email, that "Lloyd's of London . . .provides services etc. to an insurance market place ( a professional shopping mall for brokers) but does not itself underwrite

insurance business or assume the liabilities of the business transacted by the

underwriting members of the market.  There is no legal entity 'Lloyd's of London.'  It is

the members of Lloyd's –the 96 underwriting syndicates – that provide insurance

coverage, and the 60 managing agents of those syndicates each operates as an

individual business in their own right. . . Lloyd's of London is not an insurance

company."  See Exhibit J.  Mr. Knott offered Plaintiff supporting citations "*Underwriters*

*of Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1083 (11Cir. 2010); *Corfield v.*

*Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003)."  Id.

121.  Mosaic advertises on the internet as the "Home of the WA State Marijuana

Insurance Program," including an affiliation with Washington Marijuana Association,

and as a 2014 member of the Marijuana Business Association, (MJBA).  See Exhibit B

(Mosaic Advertisement (2015)).

122.  Mosaic and Celesteva fraudulently misrepresented the policy carrier as Lloyd's of

London to secure a License and Certificate of Insurance for Celesteva and Washington

that interferes with commerce, to hide their involvement with monetary transactions

derived from unlawful activity and violate the Bank Secrecy Act, (31 U.S.C. § 531-5314e;

5316-5331; 5332e; 12 U.S.C. 1829b, 1951-1959; 31 CFR Chpt X and Part 103), formerly

Currency and Foreign Transaction Act of 1970, and RICO; commit wire fraud, 18 U.S.C.

§1343, and commit mail fraud, 18 U.S.C.§ 1341, as the criminal enterprise  these

Defendants engaged as part of the overall racketeering activity and RCW 19.86 et seq.

123. On or about September 9, 2015 Plaintiff spoke with Mosaic in an attempt to file a

claim against Celesteva's  policy that Mosaic claimed it issued under Lloyd's of London.

Mosaic's representative, "Norm" confirmed the policy was issued to indemnify the WSLCB as required by statute and Washington Administrative Code, but that it is illusory against WSLCB in that unless a judicial order is issued against WSLCB or Celesteva only Celesteva can authorize a claim against that policy. Mosaic further confirmed that Lloyd's is merely a "syndicate," but claimed that "syndicate is recognized by the State of Washington's Insurance Commissioner as an insurance carrier in this state."

### *Bloomfield and GTH*

124. On or about May 11, 2015 Celesteva paid Stephanie Bloomfield and/or GTH with funds derived entirely from its marijuana operations in furtherance of and to facilitate an unlawful enterprise, to wit:  produce and distribute marijuana. Ms. Bloomfield stated "I represent Celesteva LLC and Dan Kirby, its member and manager," knowing Celesteva's purpose to produce, distribute and sell marijuana and to assist Celesteva in violation of 18 U.S.C. §§1956 and 1957 (Money Laundering), and 18 U.S.C. §§1962(a) and 1962(d).  See Exhibit S.

125. Stephanie Bloomfield is a Washington State licensed attorney, (#24251), initially admitted to practice November 10, 1994 , who not only sits on the disciplinary board, but is the Vice Chair of that Board.

126. Celesteva paid Stephanie Bloomfield and/or Gordon Thomas Honeywell with funds derived directly from racketeering activity, with the express purpose of using that representation to conspire, assist or aid Celesteva and Kirby in furtherance of racketeering activity and to shield Kirby and Celesteva from further liability by providing

knowledge or information from the bar regarding Tighe to Kirby and Celesteva, and

ensuring that Plaintiff's complaint against Tighe never resulted in Bar discipline.

127. On May 8, 2015 the Office of Disciplinary Counsel, (despite having the authority

and duty to report Tighe's "unlawful practice of law [as] a criminal act" to law

enforcement as shown in Plaintiff's complaint against Tighe), Bloomfield's office stated

it "can take no further action. . .[beyond] retain[ing] the information. . . ." See Exhibit S

(WSBA Letter).

128. It is alleged that Plaintiff's complaint against Tighe, (as filed with the Washington

State Bar Association), resulted in a dismissal at the behest or with the knowledge of

Bloomfield to benefit her clients Celesteva and Kirby, in furtherance of the racketeering

activity, for Bloomfield and possibly GTH to increase their respective profit.  Bloomfield

failed to inform the WSBA or the ODB of a potential conflict with federal law.  Neither

Bloomfield nor Gordon Thomas Honeywell filed a Notice of Withdrawal as required by

the Washington Supreme Court and the WSBA at any point after either received money

or funds that originated from a criminal and corrupt organization that forms part of a

RICO enterprise - Celesteva.[12]

129. Stephanie Bloomfield took an oath swearing fealty "to the laws of the State of

Washington and the laws of the United States and will abide by the same. . . and will

accept no  compensation in connection with the business of my client unless this

compensation is from or with the knowledge and approval of the client. . . ." Ref.

---

[12] According to the WSBA, as the Vice-Chair of the WSBA Disciplinary Board Bloomfield holds the duty to
"[r]eview[] disciplinary recommendations and dismissals," and as a member of the Office of Disciplinary
Counsel hold the duty to "[r]eceive[], review[], and []investigate grievances. . .[r]ecommends disciplinary
action or dismissal. . . ."

Washington State Courts, Court Rules APR 5(d) (as amended October 11, 1985 and administered November 10, 1994).[13]

130. Stephanie Bloomfield, and GTH, cannot voluntarily represent Celesteva in civil matters when Celesteva is in business for the sole purpose as a producer, processor, distributor and seller of marijuana, in violation of federal law, without violating a Washington attorney's oath of office, the rules of professional conduct and federal criminal prohibitions.  See Rules of Professional Conduct, Rule 1.2(d) and Comment 9 ("(d) prohibits a lawyer from knowingly counseling or assisting a client to commit a crime. . . ."); e.g. Comment 10 ("The lawyer is required to avoid assisting the client . . .[and] may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent.  The lawyer must, therefore, withdraw. . .[i]n some cases. . .give notice of the fact of withdrawal and to disaffirm any opinion, document, affirmation or the like").[14]  Stephanie Bloomfield rendered herself a defendant or a witness to these proceedings, which violates the sanctity of legal representation by making, at least a portion, of her memoranda and communications with Celesteva and Kirby unprivileged.

---

[13] Under RPC 8.4 "[i]t is professional misconduct for a lawyer to. . . (k) violate his or her oath as an attorney '[in which an attorney swears to abide by the laws of both the state and United States. APR 5(e)]'. . .[recent Washington Supreme Court] analysis does not allow [an attorney] knowingly to advise [her client] about how to violate or conceal violations of CSA [Controlled Substances Act]. See RPC 1.2 cmts 10'[n.8],' 13 '[n.9].'" Washington State Bar Association Opinion 201501, Providing Legal Advice and Assistance to Clients under WA State Retail Marijuana Law  that are engaged in commercial marijuana operations violates federal law.  ". . . took an oath, Oaths mean things," J. David Bunning,  Miller et al. v. Davis et al., Case 0:15-cv-00044-DLB (Contempt Order RE:  Motion to Compel)(E.D. Kentucky 2015).
[14] Comment 18 (adopted by Washington Supreme Court December 9, 2014) is inapplicable here because the facts and circumstances here involve an attorney's violations of existing federal law without concern for federal enforcement policy nor the applicability of Washington Initiative 502.

131. On or about May 11, 2015 or three (3) days after the WSBA failed to take appropriate action against Tighe, Bloomfield transmitted correspondence via email to the Plaintiff regarding GTH/Bloomfield's representation of Celesteva in violation of 18 U.S.C. §1961 et seq., in furtherance, to aid or assist, or conspire with Kirby and Celesteva to violate 18 U.S.C. §§1341 and 1343.

132. On or about May 12, 2015 Bloomfield transmitted correspondence via email to the Plaintiff confirming she counseled Defendants regarding federal law.

### CLAIM II
### Trafficking Victims Protection Act
### (18 U.S.C. §§1589)

133. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 132, *supra*, and 136 through 340, *infra*, including all attachments and exhibits, without waiving any claims or defenses, as though more fully set forth here in Section IV Causes of Action Claim II Trafficking Victims Protection Act, *infra*.

134. On information or belief, Defendants knowingly obtained the labor or services of the Plaintiff by threats of force, threats of serious harm and/or by means of abuse or threatened abuse of the law or legal process or by means of any scheme, plan or pattern intended to cause the Plaintiff to believe that if performance of labor or services did not occur the Plaintiff would suffer serious harm or physical restraint. On information or belief following statements Tighe made to Plaintiff, Defendants Kirby and Tighe, with others, routinely travel to California and Central America, *inter alia*, to engage or participate in sexual exploitation of minor children, supporting international sex trafficking, and regularly participate in local sex trafficking. VanHoute, Smith and

Erwin provided information to Plaintiff that Kirby, using Tighe, KP and Canopy,

historically recruited or obtained the labor or services of others in violation of TVPRA.

135. On information or belief, Defendant s knowingly recruited and obtained the

Plaintiff's labor and services in violation of the Trafficking Victims Protection Act, *inter*

*alia*, and then obstructed, attempted to obstruct or interfered with or prevented the

enforcement of the TVPRA.

### CLAIM III
**Unfair Competition**
(15 U.S.C. §1125(a))

136.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 135, *supra*,

and 138 through 340, *infra*, including any and all attachments and exhibits, without

waiving any claims or defenses, as though more fully set forth here in Section IV Causes

of Action Claim III Unfair Competition, *infra*.

137. On information or belief Kirby, Tighe, KP, Canopy, DAK and VanHoutes' conduct

and omissions against Plaintiff as their competitor in the sale of Celesteva constitutes

unfair competition.  Their wrongful conduct includes impersonating a licensed attorney;

impersonating a false business-Mason Family Farms as a fictitious competitor;

impersonating ownership of Celesteva; false advertising regarding the legality of

Celesteva's products, existence and marketability; making fraudulent claims regarding

ownership of Celesteva and sabotage of potential purchasers; using threats, coercion

and deception to purchase ownership of Celesteva from Erwin and Smith by failing to

reveal to Erwin and Smith that significant outstanding offers to purchase their shares,

well in excess of the amount Erwin and Smith received; falsely informing potential

purchasers that Plaintiff is a "convicted criminal" and "untrustworthy" to tarnish and erase Plaintiff's brand; and falsely claim Celesteva and Defendants' business is "legal." These acts, and also where Defendants disparaged the services, reputation and name of the Plaintiff in the course of Defendants' business, violate Section 43(a) of the Lantham Act.

***Claim IV***
**Anti-Trust Violations**
Sherman Act (15 U.S.C. §§1-7)
Clayton Act (15 U.S.C. §§12-27; 29 U.S.C. §§52-53)

### ***Unlawful Contract, Merger, Cartel or Conspiracy in Restraint of Trade***

138. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 137, *supra*, and paragraphs 149 through 340, *infra*, including any and all attachments and exhibits, without waiving any claims or defenses, as though more fully set forth here in Section IV Causes of Action Claim IV Unlawful Contract, Merger, Cartel or Conspiracy in Restraint of Trade, *infra*.

139. On information or belief Kirby, KP, Canopy, Tighe, VanHoute, Smith, Erwin and Celesteva unlawfully required any new purchaser to accept Kirby, KP and Canopy's lease(s), equipment and maintenance costs remain tied to purchase of Celesteva's business license(s) in violation of Clayton Act (Section 3 codified at 15 U.S.C. § 14) and the Sherman Act §§1, 2 and 3. See Blanton v. Mobil Oil Corp., 721 F.2d 1207, 1210(9th Cir. 1983)(internal citations omitted).  Defendants Kirby, KP, Canopy, Tighe viz-a-viz Mason Family Farms attempted to use predatory hiring of Plaintiff to exclude Plaintiff's services from Celesteva and retain their monopolistic design.

140. On information or belief Kirby; KP; Canopy; Celesteva; Tighe; VanHoute and Erwin hid the fact that they controlled the operations of a potentially fictitious entity Mason Family Farms, or its successor, along with their ongoing operations as a collective enterprise KP, DAK, Canopy and Celesteva where Kirby sat as a director or sole controlling person on two or more competing businesses that merged or created an unlawful trust or holding company (assets, stocks and intangibles as prohibited by Section 7), either overtly or covertly, in violation of 15 U.S.C. § 19.

141. On information or belief Kirby; KP; Canopy; Tighe; VanHoute and Celesteva engaged in price discrimination between different purchasers of Celesteva, and lessees of Canopy Park and KP, that substantially decreased competition or tended to create a monopoly in any line of commerce, in violation of 15 U.S.C. §13.

142. On information or belief Kirby; KP; DAK; Canopy and Tighe demanded and required the sale of Celesteva under condition that buyers and lessees not deal with their competitor Plaintiff, including potential purchasers provided by Plaintiff, and further Kirby; KP; Canopy; Celesteva and VanHoute required Smith, Erwin and Mackey to single out and freeze the Plaintiff from earning wages by requiring those parties to sign an exclusive, non-disclosure dealing agreement in violation of 15 U.S.C. §1 and 14, as drafted by Tighe.

143. On information or belief Plaintiff and multiple potential purchasers were threatened with expulsion from and termination of the purchase process unless parties agreed to purchase a lease for real property from Kirby, KP and Canopy, and continued to purchase products, supplies and equipment, including electricity from Kirby, KP and

Canopy or their subcontractors and the county, some at pre-rigged, artificial prices, or risk losing the sale or subsequently the licenses.

144. On information or belief Kirby, Tighe, KP, Canopy, Smith, Erwin and VanHoute knew that the settlement agreements precluded recovery of certain fees and charges in the existing lease with Celesteva.  Defendants continued to assert these false conditions to Plaintiff and potential purchasers, ultimately Kirby, KP, Canopy, VanHoute and Tighe devised a scheme, plan or artifice to coerce, threaten or deceive Smith and Erwin into selling their 50% ownership for pennies on the dollar to avoid successive application of the settlement agreements to another party.  The settlement agreements were assets available to potential purchasers and the Plaintiff received copies as such, which served as the gravamen driving Kirby's misconduct and greed.

145. On information or belief Kirby, KP, Canopy, Tighe and VanHoute attempted to unlawfully extort additional fees, costs and money from potential purchasers as a "pay-to-play" cost of doing business with them, and as Tighe stated, "to insure they [new Celesteva owners] remain at this location."

146. On information or belief Kirby, KP and Canopy substantially increased the rent and security deposit for any successive, successful purchaser of Celesteva ,(as opposed to other existing and newer business entities located on the Canopy property), as another method of tying the purchase to Kirby, KP and Canopy.  Kirby, Tighe, KP, Canopy, VanHoute, Smith, Erwin and Celesteva implemented a group boycott regarding the Plaintiff and potential purchasers that were presented by the Plaintiff when Plaintiff

and potential purchasers attempted to follow the law and ethical duties related to the sale of Celesteva.

147. On information or belief Kirby, KP, Tighe and Canopy, along with the assistance of Erwin, Smith, VanHoute, Nelwyn Tighe, Lauren Mason, Randy Mason either have created a monopoly or were attempting to create an unlawful monopoly in Mason County by coordinating the purchases of marijuana licenses, sales of real property leases to marijuana licensees in such a manner as to maintain control over or an ownership stake/interest in those licensees and to unlawfully tie all or a significant number of marijuana production licensees in Mason County to the Defendants, who enlisted the aid of multiple County officials who stated they wanted their relatives employed with the Defendants in exchange, including the relative of a court official.

148. Alternatively, as described herein, *supra*, Defendants' individual or collective conduct violated RCW 19.86.920, *inter alia*, where Defendant or Defendants, individually or jointly, in connection with the sale or purchase of Celesteva's "security" to Kirby and then Mackey, directly or indirectly, employed an unlawful device, scheme, or artifice to defraud the Plaintiff along with potential purchasers, Smith and Erwin, and made untrue statements of material fact that Celesteva's contract with Plaintiff was nonexistent, Kirby was the sole owner of Celesteva for all relevant times of this action, and that Tighe was Defendants' state licensed attorney, to eliminate potential purchasers from purchasing Celesteva away from Kirby, KP and Canopy in violation of RCW 9.38.020, 9.45.060 and RCW 21.20.010.

### *Claim V*
### TORTIOUS INFERFERENCE
(Washington Common Law <u>Eugster v. City of Spokane</u>, 121 Wn. App. 799, 811 (2004))

149. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 148, *supra*,
and paragraphs 155 through 340, *infra*, without waiving any claims or defenses, as
though more fully set forth here in Section IV Causes of Action Claim V Tortious
Interference, *infra*.

150. On information or belief a contractual relationship and business expectancy
interest existed with Celesteva and Plaintiff.  Plaintiff provided business consulting
services in Arizona, Florida, North Carolina, Nevada, Utah and Washington, and to other
consumers requesting Plaintiff's consultation services.  Plaintiff moved to Washington
to provide services.

151. On information or belief Defendants Kirby, KP, Canopy, Tighe, Erwin, Smith and
VanHoute, individually or jointly, knew of the contractual relationship between Plaintiff
and Celesteva.  Defendants Kirby, KP, Canopy, Tighe, Erwin, Smith and VanHoute,
individually or jointly, knew of Plaintiff's business expectancies with other consumers.
VanHoute offered to hire the Plaintiff to assist in the design, construction and
management of an additional commercial business park South of Olympia.

152. On information or belief, Defendants, individually or jointly, by engaging in the
conduct and omissions as described herein, intentionally and with malice did interfered
with Plaintiff's contractual relationships and business expectancies, causing damages in
the form of a breach or termination of those contractual relationships and business
expectancies.  Defendants' individual or collective conduct and omissions, as described

herein, reduced the value of Plaintiff's trade and caused severe and extensive damages to the Plaintiff.  Celesteva intentionally breached the contract.

153. On information or belief Kirby, KP, Canopy, Tighe, Erwin, Smith and VanHoutes' individual or collective interference existed for an improper purpose and said interference was used for improper means.

154. On information or belief Kirby, KP, Canopy, Tighe, Erwin, Smith and VanHoutes' individual or collective interference damaged Plaintiff.

### *Claim VI*
### Interception, Disclosure or Use of Wire, Oral or Electronic Communications
### (18 U.S.C. §§2511 et seq. and 2520)

155.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 154, *supra*, and paragraphs 158 through 340, *infra*, without waiving any claims or defenses, as though more fully set forth here in Section IV Causes of Action Claim VI Interception, Disclosure or Use of Wire, Oral or Electronic Communications, *infra*.

156. On information or belief Kirby, KP and Canopy knowingly or intentionally intercepted, disclosed or used Plaintiff's wire, oral or electronic communication transmitted between Plaintiff and Nelwyn Mason-Tighe that occurred over Plaintiff's cell phone.   On information or belief Smith confirmed that these Defendants routinely violated 18 U.S.C. §2511 as pattern or practice whenever Kirby or Tighe intended to "scam" another party, and the unlawful conduct occurred at Kirby's home.

157. On information or belief Kirby's, KP's and Canopy's knowing or intentional interception, disclosure or use of Plaintiff's wire, oral or electronic communication transmitted between Plaintiff and Nelwyn Mason resulted in damages.

### *Claim VII*
### Interception, Disclosure or Use of Wire, Oral or Electronic Communications
(18 U.S.C. §§2511 et seq. and 2520))

158. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 157, *supra*, and paragraphs 161 through 340, *infra*, without waiving any claims or defenses, as though more fully set forth here in Section IV Causes of Action Claim VII Interception, Disclosure or Use of Wire, Oral or Electronic Communications, *infra*.

159. On information or belief Tighe knowingly or intentionally intercepted, disclosed or used Plaintiff's wire, oral or electronic communication transmitted between Plaintiff and Nelwyn Mason-Tighe that occurred over Plaintiff's cell phone.  Smith confirmed to Plaintiff that Tighe routinely violated 18 U.S.C. §2511 as a pattern or practice while acting as Kirby, KP, Canopy and Celesteva's lawyer whenever Tighe or Kirby intend to "scam" other parties, and that the unlawful conduct occurred at Kirby's home.

160. On information or belief Tighe's knowing or intentional interception, disclosure or use of Plaintiff's wire, oral or electronic communication transmitted between Plaintiff and Nelwyn Mason resulted in damages.

### *Claim VIII*
### Intercepting or Recording Private Communication-Violating Right to Privacy
(Washington Statutory Claim RCW 9.73.030, .060 and .080)

161. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 160, *supra*, and paragraphs 164 through 340, *infra*, without waiving any claims or defenses, as though more fully set forth here in Section IV Causes of Action Claim VIII Intercepting or Recording Private Communication-Violating Right to Privacy, *infra*.

162. On information or belief Kirby, KP and Canopy intercepted, monitored, listened or recorded private communication between Plaintiff and Nelwyn Mason-Tighe transmitted by telephone, radio or other device without first obtaining the consent of the Plaintiff.  Defendants intercepted, monitored, listened or recorded private communications of Plaintiff regarding privileged information Plaintiff discussed over the telephone in the lobby of Celesteva, then disclosed that information along with false and defamatory information that Plaintiff is a "convicted criminal" in a public place to potential purchasers.

163. On information or belief Kirby, KP, Celesteva and Canopy directly or by an agent violated the Plaintiff's right to privacy by intercepting or recording Plaintiff's communications as described above, causing damage to the Plaintiff in an amount to be determined at trial.

### *Claim IX*
### Intercepting or Recording Private Communication-Violating Right to Privacy
(Washington Statutory Claim <u>RCW 9.73.030, .060 and .080</u>)

164. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 163, *supra*, and paragraphs 167 through 340, *infra*, without waiving any claim or defense, as though more fully set forth here in Section IV Causes of Action Claim IX Intercepting or Recording Private Communication-Violating Right to Privacy, *infra*.

165. Tighe intentionally intercepted, listened, monitored, disclosed or recorded communication between Plaintiff and Nelwyn Mason-Tighe transmitted by telephone, radio or other device without first obtaining the consent of the Plaintiff.

166. Tighe directly or by an agent violated the Plaintiff's right to privacy by intercepting or recording Plaintiff's communications as described above, causing damage to the Plaintiff in an amount to be determined at trial.

### *Claim X*
**Violation of Consumer Protection Act**
(Washington Statutory Claim <u>RCW 19.86</u> et seq.)

167. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 166, *supra*, and paragraphs 172 through 340, *infra*, without waiving any claims or defenses, as though more fully set forth here in Section IV Causes of Action Claim X Violation of Consumer Protection Act, *infra*.

168. Defendants intended for their acts and omissions, as described herein, to harm Plaintiff in his person, occupation, business or trade, and such acts and omissions constitute unfair methods of competition and unfair trade practices that are damaging to the public interest in violation of <u>RCW 19.86 et seq</u>.  Plaintiff suffered irreparable injury and unless Defendants are enjoined that injury will continue, whereby Plaintiff has no adequate remedy at law.  The acts and omissions alleged by Plaintiff in this Complaint constitute per se violations of Washington's CPA, as held by <u>State v. Reader's Digest Assn</u>., 81 Wash. 2d 259, 270 (1972)(*per se violation is any act or practice in commerce or trade that is both illegal and against public policy*), <u>e.g</u>. <u>Salois v. Mutual of Omaha</u>, 90 Wash. 2d 355 (1978)(*commercial conduct contrary to common law or violations of statutes other than CPA,[ such as unlawful practice of law] may be automatic violation of CPA*).

169. Defendants' unfair methods of competition occurred in trade or commerce and caused injury to Plaintiff's business, occupation or trade, including loss of sales, profit, customers and goodwill.   Defendants unlawfully leased, entered or made sales contracts for the sales of goods, wares, merchandise, supplies, or other commodities, or services for the use, consumption, enjoyment, or resale, or fix a price charged therefor, or discount therefrom, or rebate upon, such price, on condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, supplies, or other commodity or service of a competitor or competitors of the lessor or seller in violation of RCW 19.86.050.

170. Defendants unlawfully acquired, directly or indirectly, the whole or any part of Celesteva stock or assets to substantially lessen competition or tend to create or attempted to create a monopoly in the commercial marijuana industry.  Defendants agreed, conspired and participated in unlawful, unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020, .030 and .040, and caused damage to Plaintiff.  Defendants' actions under this law were injurious to the public interest, having the capacity to harm consumers and were committed in the course of business.

171. Plaintiff is entitled to actual damages and exemplary damages pursuant to RCW 19.86.090 *inter alia*, and the court should order Celesteva, KP and Canopy to divest all stock and assets held contrary to RCW 19.86.060 within a reasonable time the order.

***Claim XI***
Promissory Fraud
(Washington Common Law)

172. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 171, *supra*, and paragraphs 177 through 340, *infra*, without waiving any claim or defense, as though more fully set forth here in Section IV Causes of Action Claim XI Promissory Fraud, *infra*.

173. VanHoute, Erwin and Smith, on behalf of Celesteva, made a promise to pay the Plaintiff a 10% commission for "any" purchase of the business identified as Celesteva LLC, including "secondary" purchases with the present intent not to attempt the future fulfillment of that promise.

174. Kirby, as the only abstaining Celesteva board member to the promise, enlisted the aid of Smith, Erwin and Vanhoute to take the value of Plaintiff's labor and services in exchange for a majority vote by Celesteva, with the understanding that Kirby would later avoid the promise by sabotage, extortion or obtaining a better deal from potential purchasers that Plaintiff presented, with the intent to never pay the promised commission to Plaintiff and instead guarantee to pay Smith, Erwin and VanHoute as a limited golden parachute for their shares. Kirby stated to Plaintiff, potential purchasers and in a voice message to the Plaintiff's cell phone that he alone owned Celesteva and possessed the exclusive right to manage, dispose and sell Celesteva when he knew Erwin, Smith and VanHoute owned a majority share of the entity.

175. Throughout the relationship with Plaintiff Kirby, KP and Canopy, reiterated an intent to avoid or refuse to fulfill the promise to pay Plaintiff, and entered an agreement with Smith, Erwin and VanHoute who expressed an intent to never to fulfill the promise to pay Plaintiff.  The agreement centered on Smith, Erwin and VanHoute

signing a contract with the Plaintiff where these Defendants would use potential

purchasers introduced by the Plaintiff to establish valuation, make a sale and not pay

the Plaintiff, or in the alternative Kirby would purchase Celesteva, ignore the contract

and not pay the Plaintiff.  Kirby, KP, Canopy adamantly claimed to Plaintiff, Tighe,

VanHoute, Erwin and potential purchasers from the inception of the relationship with

Plaintiff that Celesteva's promise to pay Plaintiff will never happen and in fact Celesteva

failed to pay Plaintiff.

176. Kirby threatened, coerced and deceived Smith and Erwin, with the

assistance of VanHoute, Tighe, KP and Canopy, into selling their ownership in  Celesteva

and avoid paying the Plaintiff.  Once Kirby, KP and Canopy defrauded Smith, Erwin to

control Celesteva, Kirby, KP and Canopy sold 50% ownership share to James "Chaun"

Mackey for $150,000.00, that sale and purchase remains subject to the contract with

Plaintiff, and Celesteva failed to pay the Plaintiff.  On April 26 and 27, 2015 Kirby stated

in two (2) separate email messages "[t]here is no basis, reason or factual occurrence

that would justify your being paid a commission, hence we will pay you nothing."

### *Claim XII*
**Fraudulent Misrepresentation**
(Washington Common Law)

177. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 176, *supra*,

and paragraphs 189 through 340, *infra*, without waiving any claim or defense, as

though more fully set forth here in Section IV Causes of Action Claim XII Fraudulent

Misrepresentation, *infra*.

178. Defendants Board; Rushford; Kurose; Hauge; Celesteva; Kirby; Tighe; Bloomfield; Mosaic; Erwin; Smith and VanHoute, directly or indirectly, represented or held out to the public and the Plaintiff, individually or jointly, that state licensed commercial marijuana, (authorizing manufacturing, production, processing, distribution and sales of marijuana), as a "legal" employment venture or business opportunity.

179. Defendants Celesteva; Kirby; Tighe; KP; Canopy; VanHoute and Erwin represented or held out that Tighe was there legal representative as a Washington licensed attorney at law or lawyer, when in fact Tighe was disbarred nearly a decade prior.

180. Defendant Kirby misrepresented to Plaintiff and potential purchasers that he was the sole owner of Celesteva, when Kirby knew he only held a minority 25% ownership share of Celesteva.  Kirby; KP; Canopy; Celesteva; Smith; Erwin; VanHoute; Tighe and Mackey misrepresented to J P Morgan Chase; Bank of America and Timberland Bank (CM Investment 45, LLC) that the source or use of funds was in violation of the CSA.

181. Commercial marijuana manufacturing, production, distribution, sales and licensing the manufacturing, production, distribution and sales of a marijuana is unlawful under federal law.

182. Defendants' knew or should have known by way of the legal representation provided by Ferguson, Tighe, Bloomfield or GTH, that the enactment of federal statutes by Congress supersedes Washington's law, and as qualified state officials and licensed or disbarred attorneys, these Defendants failed or refused to acknowledge the materiality and truth by covertly operating under the color or authority of state law in

asserting and holding out to the public and the Plaintiff specific U.S. Department of Justice memoranda as superior authority to federal statutes and the U.S. Constitution.

183. Defendants Celesteva; Kirby; KP; Canopy; Tighe; VanHoute and Erwin knew at the beginning of Plaintiff's business relationship that Tighe was disbarred and not a state licensed attorney, and these Defendants failed or refused to acknowledge the materiality and truth by asserting and holding out to the Plaintiff, and others, that Tighe was the legal representative for Defendants as a state licensed attorney or lawyer.

184. Defendants intended that members of the public and the Plaintiff rely on the Defendants' assertions.  Defendants intended that Plaintiff rely on Defendants' licenses as proof that Washington's commercial marijuana regulations are legal so as to derive significant profit, tax revenue, proceeds, labor and services from members of the public and Plaintiff.  Defendants derived significant profit, tax revenue, proceeds, labor and services from the public and the Plaintiff.  Mosaic; Celesteva; Kirby; Smith; Erwin and VanHoute actually advertise or hold their businesses out to the public as legal marijuana business entities knowing they are not lawful marijuana business entities.

185. Plaintiff lacked sufficient information at the time of contract that the Defendants' assertions regarding the legality of Washington commercial marijuana production, processing, distribution or sales regulations were unlawful and accepted Washington's assertions based on U.S. Department of Justice memoranda that the Defendants asserted as the truth.

186. Plaintiff further based this belief, just as the public and media, including local and regional media outlets, on official statements broadcasting that Washington's

commercial marijuana statutory and regulatory scheme is and was legal and lawful.

When the State of Washington, Board, Washington Attorney General Ferguson and the

U.S. Department of Justice and the remaining Defendants assert that Washington's

commercial marijuana entities are "legal," the Plaintiff had a right to believe and rely

on those assertions in entering an employment contract to find potential purchasers for

Celesteva. Furthermore, when Plaintiff spoke with Board Deputy Director Johnson in

2013 regarding the legality of Washington's I502 program, the Plaintiff was informed by

Johnson "I care about two things:  Enforcing existing regulations and collecting

revenue.  The Board invited the IRS and other federal agencies to meet and discuss if

the Board is violating federal law by regulating commercial marijuana.  To date, they

have not attended, and so as far as the Board is concerned our regulations and licenses

are legal upon advice of the Attorney General and I will proceed accordingly."

187. At all times relevant to this action, Defendants, individually and jointly, had a duty

to disclose information that Washington's commercial marijuana legal framework,

statutory and regulatory, violated the U.S. Constitution's Supremacy Clause, Art. VI,

Cl.2, Washington Constitution, Art. I Sec. 2, 3 and 12, in combination with federal

statutes by making market participants, members of the public and the Plaintiff

potentially criminally liable and taking Plaintiff's property, labor and services without

compensation, and Defendants breached that duty by failing to disclose or inform the

Plaintiff, members of the public and market participants of that information causing a

breach of a legal duty to provide for the health and safety of the public, as a core

governmental function, including but not limited to full disclosure during contract

negotiations because of the duty of good faith, fair dealing and honesty.  Ref. Virginia St. Bd. of Pharmacy v. Virginia Citizens Consumer Council Inc., 425 U.S. 748 (1976)(*the State of Washington has an affirmative duty not to suppress truthful information regarding when an activity is lawful out of fear regarding that information's effect, and citizens have a reciprocal right to receive truthful information from the govt*); 42 U.S.C. §§1981; 1983; 1985; 1986 and 1988.

188. Plaintiff suffered damages from the reliance on the false representations, conspiracies, agreements and assertions of and by Defendants, individually or jointly, as described in this herein.  Ref. Baertschi v. Jordan, 413 P.2d 657 (Wash. 1966); e.g. Boonstra v. Stevens-Nortan, Inc. 393 P.2d 287 (Wash. 1964); Oates v. Taylor, 199 P.2d 924 (1949) and Liebergesell v. Evans, 613 P.2d 1170 (Wash. 1980). Under the color or authority of state law, in violation of 42 U.S.C. §§1981, 1983, 1985, 1986 and 1988, Defendants, individually or jointly, interfered, deprived or conspired to interfere or deprive the Plaintiff's civil and constitutional right to travel; to life, liberty, or property with due process; against taking of private property for public use without just compensation; to seek and maintain employment and to make and enter contracts. Board and Washington "exercised coercive power or provided such significant encouragement, either overt or covert, that" the acts and omissions of Celesteva, Kirby, Canopy, KP, Tighe, VanHoute, Smith, Erwin and Mackey "must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991 (1982).

### *Claim XIII*
**Fraudulent Transfer**
(Washington Statute RCW 19.40.041 present or future creditor)

189. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 188, *supra*, and paragraphs 196 through 340, *infra*, without waiving any claim or defense, as though more fully set forth here in Section IV Causes of Action Claim XIII Fraudulent Transfer, *infra*.

190. On information or belief, Celesteva fraudulently transferred 50% ownership in Celesteva, its assets and "security," to James "Chaun" Mackey with the actual intent to hinder, delay or defraud the Plaintiff when Celesteva knew or should have known the Plaintiff was a creditor of Celesteva.

191. On information or belief, Celesteva and Kirby, concealed the debt to Plaintiff from Mackey or concealed the transfer from the Plaintiff by failing to give notice to Plaintiff of the transfer.

192. Prior to the transfer of 50% ownership of Celesteva to Mackey, Celesteva acknowledged the receipt and delivery of Plaintiff's Notice of Claims and Notice to Preserve Evidence, personally on April 27, 2015 and by way of counsel again in May 2015.  Celesteva was under threat of this lawsuit at the time of transfer to Mackey.

193. At all times relevant to this action, Celesteva, Kirby, KP and Canopy, acting in concert, absconded, then hid and concealed assets of Celesteva to avoid payment of a debt to Plaintiff.  On information or belief, VanHoute and Erwin claimed that in 2015 Celesteva sold 20 pounds of marijuana at $1500 per pound; possessed 10 pounds of cured, marketable commercial marijuana with 120 flowering plants producing another

50 to 60 pounds of dried marijuana on or about April 4, 2015, yet in financial statements filed with Washington, Celesteva declared that it only received $2 in revenue 2015.

194. The value of the consideration received by Celesteva or the amount of the debt/obligation was reasonably equivalent to the value of the ownership share transferred to Mackey by Celesteva.

195. The transfer of 50% ownership to Mackey by Celesteva occurred shortly after Celesteva incurred a substantial debt to the Plaintiff.

### *Claim XIV*
### Fraudulent Transfer
(Washington Statute RCW 19.40.051 present creditor)

196. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 195, *supra*, and paragraphs 199 through 340, *infra*, without waiving any claim or defense, as though more fully set forth here in Section IV Causes of Action Claim XIV Fraudulent Transfer, *infra*.

197. On information or belief, Defendant Celesteva surreptitiously transferred 75% ownership of Celesteva from VanHoute, Smith and Erwin to Kirby on or about April 20, 2015, as discussed herein, after Celesteva incurred an obligation to pay the Plaintiff in violation of RCW 19.40.041 and/or .051; 21.20.010; 9A.60.030; 9.38.020; 9.45.060 and 19.86 et seq.

198. Kirby, KP and Canopy, claiming an agency of Celesteva, fraudulently transferred assets for the purchase and sale of 75% ownership of Celesteva to VanHoute, Smith and Erwin when Celesteva was insolvent and the transfer was made to Kirby, an insider, to avoid payment of Celesteva's debt to Plaintiff that Celesteva incurred prior to the

transfer of assets, and transfer was made without receiving reasonably equivalent value.  Kirby affixed his signature to a purchase agreement, misrepresenting KP and himself as the sole and legal owner of Celesteva.

## CLAIM XV
## FALSE DESCRIPTIONS
### 15 U.S.C. § 1125

199. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 198, *supra*, and paragraphs 202 through 340, *infra*, without waiving any claim or defense, as though fully set forth here in Section IV Causes of Action Claim XV - False Descriptions, *infra*.

200. On information or belief, the Board; Celesteva; Kirby; KP; Canopy; Mosaic; Erwin; Smith and VanHoute, in connection with goods or services used in commerce, used, placed, communicated or published word(s) or device(s) or false or misleading descriptions of fact, or false or misleading representations of fact likely to cause mistake, confusion or deceive the Plaintiff or other consumers as to the approval, sponsorship in the promotion or commercial advertising misrepresented the nature, characteristics of Defendants' goods, services or commercial activities.

201. Celesteva promoted itself on the internet as a legal marijuana business; Kirby misrepresented himself as the sole owner of Celesteva in March and April 2015 at a time prior to purchase of Smith, VanHoute and Erwin's shares; Tighe misrepresented himself as a licensed attorney and lawyer for Celesteva, KP, Canopy and Kirby; Defendants willfully and with malice used Plaintiff's brand and reputation for commercial use to deceive consumers as to the affiliation, association or connection

between Plaintiff and Defendants without consent of Plaintiff; Kirby misrepresented

Tighe as his licensed attorney and lawyer; Mosaic misrepresented itself as a legal

marijuana insurance company; Board and Washington falsely claim commercial

marijuana is legal; Kirby, Tighe and VanHoute misrepresented to Smith and Erwin that

no other offers to purchase Celesteva existed in March and April 2015, and Kirby,

Smith, Erwin, Tighe and VanHoute misrepresented, through the use of the mail and

wire, to Washington, the Board and U.S. Treasury all income received, accrued or

earned in 2014 and 2015 constituting an accession to wealth clearly realized to commit

tax fraud and receive a commercial marijuana license.

### CLAIM XVI
### Conversion and Trover
(Washington Common Law)

202. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 201, *supra*,

and paragraphs 207 through 340, *infra*, without waiving any claim or defense, as

though fully set forth here in Section IV Causes of Action Claim XVI - Conversion, *infra*.

203. Plaintiff had a possessory interest in intangible property, as evidenced by the

service agreement with Celesteva, and Defendants' willful or intentional interference

with the Plaintiff's possessory interest that defendants' acts or omissions are the legal

cause of the Plaintiff's damage.  Defendants lacked Plaintiff's consent or legal right to

take Plaintiff's possessory interest in the contract, as an intangible, and Defendants

exercise of dominion and control over that intangible remains inconsistent with the

Plaintiff's right to possession.

204. Defendants Kirby; KP; Canopy; VanHoute; Smith; Erwin and Celesteva unlawfully

converted Plaintiff's possessory right to intangible property interest viz-a-viz service

contract when Defendants kept or retained Plaintiff's commission upon receipt of money and ownership shares on or about April 20, 2015 and then again on or about August 21, 2015 such that the Defendants applied the property interest to their own use and continue to reconvert and dispossess the Plaintiff of his possessory interest for Defendants' use without legal cause or consent of the Plaintiff, such that the conversion is ongoing as established by DeVries v. Brumback, 349 P.2d 532 (Cal. 1960).

205. Defendants Tighe; KP; Canopy; Smith; Erwin and VanHoute acted together in effecting the conversion of Plaintiff's possessory interest in the intangible property interest at the direction of Kirby, and aided and abetted unlawful conversion sufficient that they are jointly and severally liable pursuant to Hills v. Ross, 3 U.S. 331 (1796); Western Bond & Mortg. Co. v. Chester, 145 Wash 81 (1927); Bowe v. Palmer, 102 P. 1007 (Utah 1910) and Copelin v. Berlin Dye Works & Laundry Co., 144 P 961(Cal. 1914).

206. Defendants Tighe; KP; Canopy; Mackey and Kirby acted together in effecting the conversion of Plaintiff's possessory interest in the intangible property interest at the direction of Kirby, and aided and abetted the unlawful conversion sufficient that they are jointly and severally liable pursuant to Hills v. Ross, 3 U.S. 331 (1796); Western Bond & Mortg. Co. v. Chester, 145 Wash 81 (1927); Bowe v. Palmer, 102 P. 1007 (Utah 1910) and Copelin v. Berlin Dye Works & Laundry Co., 144 P 961(Cal. 1914).

## V.
## PRAYER FOR RELIEF AND REMEDIES

### *FEDERAL*

207. If the court finds that the Plaintiff's claims against the State of Washington, as an insured party through Defendant Mosaic, the Board or any official thereunder, are

precluded or barred by the 11th Amendment, as an alternative, the Plaintiff respectfully

requests that the court strip the individual Board members and the Washington

Attorney General of their official character under Ex Parte Young, 209 U.S. 123 (1908);

e.g. Edelman v. Jordan, 415 U.S. 651 (1974), and their progeny, and impose appropriate

prospective and equitable relief to the Plaintiff, including an injunction barring the

State of Washington's regulation of commercial marijuana operations, by legislative

decree pronounced in RCW 69.50 et seq. "Uniformed Controlled Substances Act," until

this cause of action reaches final disposition, including the exhaustion of all appeals.

### *Declaratory Judgment*
### (22 U.S.C. §§2201 and 2202)

208. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 207, *supra*,

without waiving any claim or defense, as though fully set forth here in Section V Relief

and Remedies - Declaratory Judgment, *infra*.

209. This is a request for relief seeking a Declaration that Washington's legalization of

commercial marijuana, including all statutes, rules and regulations, along with any and

all licenses issued for the production, manufacture, distribution and sales of marijuana,

are unconstitutional, pursuant to the Supremacy Clause of the United States

Constitution, Art. 6 Cl. 2, by way and through the Controlled Substances Act of 1970, as

enumerated in 21 U.S.C. §§841(b)(1)(A); 841(b)(1)(B); 841(b)(1)(C) and (D);  843(a)(6)

and (7); 854(a); 856; 18 U.S.C. §§ 1956, 1957 and 1960 and the Bank Secrecy Act, (31

U.S.C. § 531-5314e; 5316-5331; 5332e; 12 U.S.C. 1829b, 1951-1959; 31 CFR Chpt X and

Part 103), formerly the Currency and Foreign Transaction Act of 1970.

210. This is a request for relief seeking a Declaration that Celesteva, including its past and present individual board members and shareholders, operated and continue to operate in violation of the law, specifically the Controlled Substances Act of 1970, as enumerated in 21 U.S.C. §§841(b)(1)(A); 841(b)(1)(B); 841(b)(1)(C) and (D);  843(a)(6) and (7); 854(a); 856 and 18 U.S.C. §§ 1956, 1957 and 1960, by producing, distributing and selling commercial marijuana; possessing equipment, chemicals, product or material to manufacture marijuana; distribute material used to manufacture marijuana; use the telephone, email, mail or any other communication in furtherance of the manufacture or sale of marijuana; use the Internet to advertise the sale of marijuana; reinvesting the proceeds from marijuana operations; facilitating a financial transaction involving funds derived from manufacturing and selling marijuana; and knowingly lease, rent, maintain, manage or control a place where marijuana is manufactured or sold.

211. This is a request for relief seeking a Declaration, as asserted by Plaintiff, that Daniel A. Kirby Sole Proprietor; Mosaic Insurance Alliance LLC; Kirby Properties LLC and Canopy Park LLC operate and operated in violation of the law, specifically the Controlled Substances Act of 1970, as enumerated in 21 U.S.C. §§843(b), 854(a) and 856, and 18 U.S.C. §§ 1956, 1957 and 1960, by knowingly leasing, renting, maintaining, managing or controlling a place where marijuana is manufactured or sold; use of the telephone, email, mail or any other communication facility in furtherance of the manufacture or sale of marijuana; reinvesting the proceeds from marijuana operations and knowingly facilitating a financial transaction involving funds derived from manufacturing and selling marijuana.

212. This is a request for relief seeking a Declaration, as asserted by Plaintiff, that Celesteva LLC; Daniel A. Kirby Sole Proprietor; Kirby Properties LLC; Mosaic Insurance Alliance LLC and Canopy Park LLC violated RCW 25.15.030 by carrying on any unlawful business or activity, to wit:  marijuana, *supra*, thereby making each individual partner, shareholder, officer and member "personally liable for any act, debt, obligation, or liability of the limited liability company," pursuant to RCW 25.15.060.

213. This is a request for relief seeking a Declaration that Stephanie Bloomfield, a Washington State licensed attorney, took an oath of office swearing fidelity to the U.S. Constitution and laws thereunder, and that by knowingly and voluntarily accepting illegal proceeds from Celesteva and Daniel A. Kirby; Ms. Bloomfield violated her oath by assisting and aiding Celesteva and Kirby to violate the Controlled Substances Act of 1970 and RICO, as discussed *supra*, by way and through Washington Rules of Professional Conduct, Rule 1.2(d) and Comment 9 ("*(d) prohibits a lawyer from knowingly counseling or assisting a client to commit a crime. . . .*"); e.g. Comment 10 ("*The lawyer is required to avoid assisting the client . . .[and] may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent.  The lawyer must, therefore, withdraw. . .[i]n some cases. . .give notice of the fact of withdrawal and to disaffirm any opinion, document, affirmation or the like*");[15] and 8.4(k)("*knowingly. . .violate his or her oath as an attorney*").

---

[15] Comment 18 (adopted by Washington Supreme Court December 9, 2014) is inapplicable because the facts and circumstances here involve an attorney's violations of existing federal law without concern for federal enforcement policy related to the applicability of Washington Initiative 502.

214. This is a request for relief seeking a Declaration that Daniel Tighe is a disbarred attorney who lost the privilege and right to practice law upon conviction of tax fraud, and therefore had a duty to refuse to provide legal representation to Celesteva; Kirby; KP; Canopy and Mason Family Farms LLC.

215. This is a request for relief seeking a Declaration that Mosaic Insurance Alliance operated and operates in violation of the law by soliciting, advertising and claiming to provide insurance to "marijuana" businesses as a legal business entity, using the stream of commerce, including a claim Mosaic insures Celesteva, and that Mosaic Insurance Alliance is not registered as an insurance carrier with the State of Washington, and that Mosaic Insurance Alliance assisted and conspired with Celesteva to violate the Controlled Substances Act of 1970 and RICO as the Board required Celesteva to obtain and maintain $1,000,000 of insurance coverage as a condition of licensure.

216. This is a request for relief seeking a Declaration that Celesteva, its board members and shareholders, unlawfully used, maintained, deposited or withdrew funds J.P. Morgan Chase, Bank of America Corporation and Timberland Bank (CM Investment 45 LLC) to operate, own, purchase, initiate or control Celesteva's marijuana operations, in violation of the Bank Secrecy Act, (31 U.S.C. § 531-5314e; 5316-k5331; 5332e; 12 U.S.C. 1829b, 1951-1959; 31 CFR Chpt X and Part 103), formerly the Currency and Foreign Transaction Act of 1970; 21 U.S.C. §854(a); 18 U.S.C. §§1956, 1957 and 1960 and RICO.

217. This is a request for relief seeking a Declaration that for instances relevant to this action Celesteva LLC; Kirby Properties LLC and Canopy Park LLC operated as one entity whereby they commingled money and assets; failed to observe corporate and LLC

LLC formalities, such as following the law, bylaws and operating agreements, conduct regular meetings and record all decisions in the minutes; individual members signed all WSLCB business documents and a business settlement agreement in their individual capacity; failed to maintain adequate insurance; failed to maintain rigorous, if any, separation between personal and business finances; incurred debts and withdrew money out of the business accounts to pay individual members, when Celesteva, for example, lacked adequate funds to continue operating the business and pay debts as they became due, Kirby withdrew or paid those debts from KP, DAK, Canopy or personal accounts; failed to pay creditors and employees before individual members at a time when business, (Celesteva), was winding up;  Kirby, KP and Canopy paid VanHoute, Smith and Erwin wages for work as Celesteva Board members; Celesteva favored relatives, friends, family and individual members over creditors during winding up; KP, Canopy and Celesteva transferred funds and assets to individual members without sufficient consideration; following the convoluted purchasing transaction of Celesteva during the period when Plaintiff's Agreement remained effective, each new successive business entity continued to use the same name, stationary, advertisements and other *indica* of the "old" business; Celesteva completed the purchase transaction with James MacKey after Celesteva, through Kirby and Bloomfield, acknowledged the existence of Plaintiff's claims awaiting disposition via this lawsuit; Kirby declared to Peters that no lawsuits or potential lawsuits existed against Celesteva when he knew Smith, et al., declared otherwise; Celesteva was sold to an insider or insiders, (*if Chaun Mackey is Kirby's son as asserted by VanHoute, Erwin and Smith*); Kirby and KP,

declared as one entity on April 11, 2015, in writing, that KP was the legal "Owner" of Celesteva while declaring to Board that Kirby only held 25% co-owner stake in Celesteva and that neither Kirby, Canopy or KP held any ownership interest in Celesteva or any other marijuana business; KP, Canopy and Celesteva conducted fraudulent transfers to avoid payment to Plaintiff as a creditor with the intent to hinder, delay or defraud the Plaintiff creditor.

218. This is a request for relief seeking a Declaration that under the Agreement between the Plaintiff and Celesteva, and due to the fraudulent transfers and misrepresentations by Kirby, KP, Canopy, Tighe, Smith, Erwin and VanHoute, the effective period of that Agreement ran from March 13, 2015 until the date of deposit into escrow by James Mackey on or about August 21, 2015), and that the entire purchase transaction encompassed the purchase of the Settlement Agreements, Business and Assets from Smith, Erwin and VanHoute along with the secondary purchase by James Mackey.

219. This is a request for relief seeking a Declaration, as asserted by Plaintiff, that Celesteva, (the current entity where 50% ownership was purchased by James Mackey), became liable for the debts and liabilities of the LLC prior to inclusion of Mackey, as the purchase constituted a *defacto* merger or consolidation, the purchaser is a mere continuation of the seller or the transfer of assets is for the fraudulent purpose of escaping liability, pursuant to Hall v. Armstrong Corp., Inc., 103 Wash.2d 258, 261-62 (1987), or under the alternative theory that Kirby, KP, Canopy, Mackey and Celesteva purchased the entire company of Celesteva, as a "continuing business enterprise action," that included the continuity of physical location, production of the same

product, retention of the same name, continuity of the same general and specific

business operations, and purchaser held itself out to the Board as a continuation of the

seller, pursuant to <u>Louisiana-Pacific v. ASARCO</u>, 909 F.2d 1260, 1265 n.7 (9th Cir. 1990).

### *RICO Claim I*

220. Pursuant to <u>18 U.S.C. § 1964(c)</u>, Defendants proximately caused an injury to the

Plaintiff, Plaintiff's business or property by reason of Defendants' "pattern of

racketeering activity," "criminal enterprise" and "predicate acts," including violations of

Washington Consumer Fraud and Deceptive Business Practices Act, *inter alia*, as set

forth herein.  Plaintiff respectfully requests that the court issue an order, upon finding

or determination that any Defendant or Defendants violated RICO, as well as the

necessary predicate acts, caused injury to the Plaintiff, and award the Plaintiff

damages, including treble or punitive damages, prejudgment and post judgment

interest and costs.

### *Trafficking Victims Protection Act Claim II*

221. Pursuant to <u>18 U.S.C. §§1593 and 1595</u>, the Plaintiff respectfully requests that the

court issue an order, upon a finding or determination that any Defendant or

Defendants violated the <u>TVPRA</u>, awarding the Plaintiff compensatory, restitution ("full

amount of the [Plaintiff's] losses" and "the greater of the gross income or value to the

defendant of the [Plaintiff's] services or labor"), and punitive damages against any

Defendant or Defendants, plus prejudgment and post judgment interest.

### *Antitrust Violations-Sherman/Clayton Act Claim IV*

222. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15, the Plaintiff respectfully requests that the court issue an order, upon a finding or determination, that Defendant or Defendants violated any of the anti-trust provisions of the Sherman or Clayton Act, for treble damages, pre- and post-judgment interest, costs and injunctive relief.

### *Interception of Wire, Oral or Electronic Communications Claim VI*

223. Plaintiff respectfully requests that the court issue an order awarding the Plaintiff statutory damages, pursuant to 18 U.S.C. §2520(c)(2), upon a finding or determination that Defendant or Defendants violated 18 U.S.C. § 2511, shown as the greater amount of actual damages and any profits made by Kirby, KP, Canopy from the sale of any business Nelwyn, Kirby, KP, Canopy and Tighe claimed existed, the purchase transaction for Celesteva, or $10,000, and if intentional or willful then an additional damage award pursuant to §2520(b)(2) as punitive damages.

### *Interception of Wire, Oral or Electronic Communications Claim VII*

224. Plaintiff respectfully requests that the court issue and order awarding the Plaintiff statutory damages, pursuant to 18 U.S.C. §2520(c)(2), upon a finding or determination that Defendant or Defendants violated 18 U.S.C. § 2511, commensurate to the greater amount of actual damages and any profits made by Kirby, KP, Canopy from the sale of any business Nelwyn, Kirby, KP, Canopy and Tighe claimed existed, the purchase transaction for Celesteva, or $10,000, and if intentional or willful then an additional damage award pursuant to §2520(b)(2) as punitive damages.

**<u>Washington State Remedies</u>**
**PIERCE THE CORPORATE VEIL**

225. Pursuant to <u>RCW 25.15.060</u> (2014) the Plaintiff respectfully requests that the court

issue an order Piercing the Corporate Veil of Celesteva LLC; Kirby Properties LLC and

Canopy Park LLC, and hold the individual officers, Daniel A. Kirby; Nicole Smith; Brent G.

Erwin, James Mackey and James VanHoute individually liable for all amounts Celesteva, KP

and Canopy are unable to satisfy under this court's judgment, if any, based on the

following and incorporating each and every paragraph herein as though fully set forth here:

A.   Kirby, Daniel A. Kirby and Daniel A. Kirby Sole Proprietor created, with the assistance and knowledge of Daniel Tighe, Kirby Properties LLC; Canopy Park LLC; VanHoute; Smith and Erwin to commit fraud by way and through Celesteva LLC as a way to justify breaching Celesteva's duty to operate lawfully and its duty to pay its financial obligations to the Plaintiff;

B.   There is nothing more egregious than for a court to allow individuals to hide, mask or avoid the law by using a corporate form, (including an LLC).  Defendants Kirby, Tighe, VanHoute, Erwin and Smith repeatedly used the corporate forms of Celesteva LLC, Kirby Properties LLC and Canopy Park LLC to accomplish fraud and injustice to such a degree that liability should attach not only to the corporate forms, but to each individual board member and partner because otherwise the court is merely aiding the fraud or injustice.  <u>Chadwick Farms Owners Ass'n. v. FHC</u>, LLC, 207 P.3d 1251 (Wash. 2009);

C.   Kirby, Smith, VanHoute, Mackey and Erwin used the corporate form of Celesteva to avoid an independent duty to act lawfully and honor the terms of the written agreement with the Plaintiff after the Plaintiff performed services that benefitted Celesteva and Kirby, Smith, VanHoute and Erwin.  RCW 25.15.030 Celesteva entered into a written agreement for the Plaintiff's services to find potential purchasers with the expectation that a potential purchaser would buy Celesteva and its assets.  Multiple potential purchasers tendered written offers to Celesteva to purchase Celesteva and its assets in March and April 2015.  Kirby, Smith, VanHoute and Erwin received financial consideration from an extensive and convoluted transaction individually, and used Celesteva to breach the written agreement with the Plaintiff.

D.   Celesteva LLC, just as all corporations and LLC's have an ongoing duty "to cause the business of the Limited Liability Company to be conducted with sound business practices, in a lawful manner. . . ."  Celesteva Membership Agreement at 2.

E.   Daniel Kirby and Daniel Tighe used the corporate form of Kirby Properties LLC and Canopy Park to avoid an independent duty to act lawfully and to not interfere in the contractual obligations of Celesteva.  Kirby employed and used Tighe as a lawyer

knowing Tighe was disbarred for Tax Fraud nearly a decade prior.  Using the corporate form of LLC, Kirby and Tighe unlawfully threaten and extort, while Kirby, Smith, Erwin and VanHoute commit mail, wire and tax fraud, unlawfully intercept, record and disclose wire, oral and electronic communications of Plaintiff, as part of RICO enterprise.  Kirby and Tighe unlawfully interfered with contractual relationships involving the Plaintiff, *inter alia*, as discussed herein.

### *Tortious Interference Claim V*

226.    Pursuant to Washington common law, the Plaintiff respectfully requests the court issue an order, upon a finding or determination that Defendant or Defendants tortuously interfered with the Plaintiff's contract, business or expectancy interest, with malice, by awarding Plaintiff economic losses, mental distress, punitive damages and negative injunction prohibiting Defendant or Defendants from benefitting from any contractual relationship that arose or may arise out of the interference, costs and for any and all other relief the court deems just and fair.

### *Intercepting or Recording Private Communication-Violating Right to Privacy Claim VIII*

227.    Pursuant to RCW 9.73.060, for each and every instance any Defendant violated RCW 9.73.030 the Plaintiff respectfully requests that the court, upon a finding or determination, issue an order awarding the Plaintiff actual damages to Plaintiff's business, person and reputation, including mental pain and suffering endured by Plaintiff on account of any violation, costs and for any other relief the court deems just and fair.

### *Intercepting or Recording Private Communication-Violating Right to Privacy Claim IX*

228.    Pursuant to RCW 9.73.060, for each and every instance any Defendant violated RCW 9.73.030 the Plaintiff respectfully requests that the court, upon a finding or determination, issue an order awarding the Plaintiff actual damages to Plaintiff's business,

person and reputation, including mental pain and suffering endured by Plaintiff on account of any violation, costs and for any other relief the court deems just and fair.

### Violation of Consumer Protection Act RCW 19.86 Claim X

229.    Pursuant to RCW 19.86.080(3) the Plaintiff respectfully requests that the court, upon a finding or determination, issue an order awarding the Plaintiff any and all relief "necessary to restore" the Plaintiff "in interest  any moneys or property, real or personal, which may have been acquired, regardless of whether [Plaintiff] purchased or transacted for goods or services directly with the defendant[s] or indirectly through sellers," excluding any duplicative amounts awarded for the same violation, and pursuant to RCW 19.86.090 "actual damages," injunctive relief or both and treble damages.

### Promissory Fraud Claim XI

330.    Pursuant to the common law application of this claim sounding in tort, the Plaintiff respectfully requests that the court issue an order, upon a finding or determination, awarding the Plaintiff compensatory, equitable and punitive damages (*calculated by the dollar-value Defendant(s) gained multiplied by the reciprocal of the probability of enforcement*), and for any and all other relief the court deems just and fair.

### Fraudulent Misrepresentation Claim XII

331.    Pursuant to Common Law principles, Restatement of Law, Second, Torts (Second Restatement of the Law – Torts; American Law Institute (1997)), §§525 and 549, the Plaintiff respectfully requests that the court issue an order, upon a finding or determination, awarding the Plaintiff actual damages, as well as "benefit of the bargain" losses due to the commercial transaction or the difference between the real and

represented values of Celesteva and its assets, plus prejudgment and post judgment

interest, and for any and all other relief the court deems just and fair.

### Fraudulent Transfer Claim XIII

332.       Pursuant to RCW 19.40.071 the Plaintiff respectfully requests that the court,

upon a finding or determination, issue:

A.  An Order voiding all transfers of ownership of Celesteva that occurred in August 2015 as reported to Board and Washington to the extent necessary to satisfy the Plaintiff's claims or judgment; and
B.  A Writ of Attachment issued against the assets transferred by, to or from Kirby; KP; Canopy; Tighe; Celesteva; and Mackey; and
C.  A Temporary Restraining Order barring any and all further disposition by the debtor, Celesteva or transferee Mackey of all assets transferred or any property obtained with the assets transferred; and
D.  An Order Appointing a Receiver to take charge of all assets transferred or other property Kirby, Smith, KP, Canopy, Tighe, Mackey and Celesteva obtained or received as a result of the fraudulent transfers.

### Fraudulent Transfer Claim XIV

333.     Pursuant to RCW 19.40.071 the Plaintiff respectfully requests that the court, upon a

finding or determination, issue:

A.  An Order voiding all transfers of ownership of Celesteva that occurred in April 2015 to the extent necessary to satisfy the Plaintiff's claims or judgment; and
B.  A Writ of Attachment issued against the assets transferred by, to or from Kirby, KP, Canopy; Celesteva; Tighe; Smith; Erwin and VanHoute; and
C.  A Temporary Restraining Order barring any and all further disposition by the debtor, Celesteva or transferee Smith, Kirby, Erwin and VanHoute of all assets transferred or any property obtained with the assets transferred; and
D.  An Order Appointing a receiver to take charge of all assets transferred or other property Kirby, Smith, KP, Canopy, Erwin, Mackey, Celesteva, Canopy, KP and VanHoute obtained or received as a result of the fraudulent transfers.

### *False Description Claim XV*

334.    Pursuant to 15 U.S.C. §1125 the Plaintiff respectfully requests that the court enjoin

the Defendants from continuing to publish their false statements and descriptions, and

further issue an order awarding the Plaintiff damages in an amount to be proven at trial.

### *Conversion Claim XVI*

335.    Pursuant to common law, (Platte Valley Bank v. Tetra Financial Group, LLC, et al.,

682 F.3d 1078 (8th Cir. 2012), (citing Spates v. Dameron Hospital Assn., 114 Cal. App. 4th

208 (Cal. App. 3d Dist. 2003)), the Plaintiff respectfully requests  that the court, issue an

order:

   A. Awarding the Plaintiff the value of the converted property as determined at the
   time of conversion; and
   B. Fair compensation for the time and money properly expended in the pursuit to
   recovery; and
   C. Emotional distress damages; and
   D. Treble or Punitive Damages.

### *Unjust Enrichment/Restitution*

336.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 335 as

though fully set forth herein.  Defendants unjustly received benefit at Plaintiff's expense

through their wrongful conduct, including interference with Plaintiff's business

relationships and other unfair business practices.   Defendants continue to unjustly retain

these benefits at Plaintiff's expense and it would be unjust for Defendants to retain any

value they retained as a result of their wrongful conduct.

337.    Plaintiff is entitled to a constructive trust consisting of the benefit conferred upon

Defendants evidenced by the revenues or proceeds derived from their wrongful conduct at

Plaintiff's expense, along with all profits so derived.  Plaintiff is entitled to full restitution of all amounts in which Defendants have been unjustly enriched at Plaintiff's expense.

### Accounting of Profits and Disgorgement

338.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 337 as though fully set forth herein.  Since March 2015 the Defendants have obtained business through unlawful conduct, as alleged in this Complaint.

339.    Defendants received money as a result of misconduct, at Plaintiff's expense, and some or all such money is rightfully due to Plaintiff.  Defendants willfully and intentionally induced contractual breaches to the detriment of Plaintiff.

340.    The amount of money due from Defendants to Plaintiff cannot be ascertained without a full accounting of Defendants' wrongful and unlawful conduct.  Defendants Smith; VanHoute; Erwin and Tighe, at the direction of Kirby; KP; Celesteva and Canopy, individually or collectively, begun to hide and dispose of assets, documents and evidence.  Amazon is entitled, therefore, to a full accounting and records of Defendants' unlawful activities.

### Defamation, Slander and False Light

341.  Plaintiff realleges and incorporates by reference each and every paragraph, supra, as though set forth fully herein.

342.  Kirby, KP, Canopy, Tighe, VanHoute, (and John and Jane Does 1-10), made statements and republished false and defamatory statements concerning the Plaintiff, as defamation per se in that the statements imputed criminal conduct on the Plaintiff and/or prejudiced the Plaintiff in the conduct of his business, trade or profession, where

Defendant's statements exhibited a reckless disregard for the truth and were made for the purpose of retaliation, and in making the false and defamatory statements Defendant's knew or in the exercise of due diligence should have known those statements were false.

343.  The Defendant's false and defamatory statements and published by direct expression or innuendo cast aspersions on the Plaintiff where Defendant and Defendants acted in a manner which rendered the truth irrelevant to their unlawful pursuits, were malicious and intentional, and Plaintiff alleges that this form of impunity adversely affected, and will continue to adversely affect the Plaintiff's rights, business, trade and profession and therefor damages are presumed, in an amount to be determined by the court or jury.

## CONCLUSION

Plaintiff's claims against the Defendants, individually and jointly, are not deficient. Plaintiff has stated claims that are supported by specific allegations and evidentiary support.

Washington's commercial marijuana operation, although hopeful, fails against existing federal law.  Attorney General Ferguson and Attorney Defendant Bloomfield took an oath to support the U.S. Constitution and the laws thereunder, irrespective of the creative amendment to that oath the Washington Supreme Court recently enacted, all judges and licensed attorneys in this country owe fealty to the Supremacy Clause long before the Board's regulations or Washington's marijuana statutes.  Yet, all refuse or fail to show fidelity to that basic principle as legal professionals entrusted with preserving our system of laws, not men.

Celesteva, just as all other Board sanctioned and licensed commercial marijuana businesses, operate as an illegal cartel in furtherance of criminal racketeering regardless of the label the State of Washington provides to those businesses.  U.S. citizens and residents of Washington who accept Washington's invitation to participate are denied their constitutional rights without notice, deprived of their due process, denied equal protection of the law and subject to selective prosecution.

For all of the aforementioned reasons, the Plaintiff respectfully requests a judgment against Defendants as set forth herein for each claim listed and the damages sought, enjoining future unlawful conduct, plus pre- and post-judgment interest, equitable relief, costs and the entry of an Order declaring that the Defendants account and hold in trust, as constructive trustees for the benefit of Plaintiff, their illegal profits, along with any and all other relief the court deems just and fair.

RESPECTFULLY SUBMITTED:

Samuel L. Biers
P.O. Box 212
Monroe, Washington 98272

**LING ENVELOPE**

EP14 July 2013
OD: 11.625 x 15.125

0000000013

only.

# PRIORITY
## ★ MAIL ★

®

Label 228, July 2013

FOR DOMESTIC AND INTERNATIONAL USE

FROM: S.L.Brers
P.O. Box 515
Monroe, WA 98272

TO: U.S. Dist Ct
office of clerk
700 Stewart St Ste 230
Seattle, WA 98101

Sep 22, 15
547682072-02

**PRIORITY MAIL ®1-Day**

1005

Expected Delivery Day: 09/23/2015      C028

USPS TRACKING NUMBER

9505 5132 1932 5285 0840 43



UNIT
POST