1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

| | |
|---|---|
| SAMUEL L. BIERS,<br><br>                    Plaintiff,<br><br>          v.<br><br>WASHINGTON STATE LIQUOR<br>AND CANNABIS BOARD, et al.,<br><br>                    Defendants. | CASE NO. C15-1518JLR<br><br>ORDER |

## I.    INTRODUCTION

16

17

18

19

20

21

22

This matter comes before the court on three motions:  (1) Defendants State of

Washington ("the State"), Washington State Attorney General Robert Ferguson,

Washington State Liquor and Cannabis Board ("the Board"), and Board members Jane

Rushford, Ruthann Kurose, and Russ Hague's (collectively, "State Defendants") motion

to dismiss (State MTD (Dkt. # 30)); (2) Defendants Daniel Kirby, Daniel Tighe, Nicole

Michelle Pavon-Irwin-Smith, Celesteva, LLC, Canopy Park, LLC, and Kirby Properties,

1   LLC's (collectively, "Private Defendants") motion to dismiss (Priv. MTD (Dkt. # 33));

2   and (3) pro se Plaintiff Samuel L. Biers' motion for partial summary judgment or, in the

3   alternative, partial judgment on the pleadings (Biers Mot. (Dkt. # 27); *see also* Biers

4   Mem. (Dkt. # 27-1) (presenting the majority of Mr. Biers' arguments in favor of his

5   motion)).  State Defendants ask the court to dismiss all claims against them for lack of

6   standing and failure to state a claim on which relief can be granted.  (*See* State MTD at

7   4.)  Private Defendants seek dismissal of four of Mr. Biers' claims against them, also for

8   lack of standing and failure to state a claim.  (*See* Priv. MTD at 2.)  Mr. Biers opposes

9   Defendants' motions and in his own motion requests a determination that State

10   Defendants are not entitled to immunity under the Eleventh Amendment or state law.

11   (*See* Biers Resp. (Dkt. # 46); Biers Mem. at 3.)

12      The court has considered the motions, all submissions filed in support thereof and

13   opposition thereto, the relevant portions of the record, and the applicable law.  Being

14   fully advised,[1] the court GRANTS State Defendants' motion, GRANTS Private

15   Defendants' motion, DENIES as moot Mr. Biers' motion, and GRANTS Mr. Biers leave

16   to amend as set forth below.

17   //

18   //

19   //

20   //

21   _____

22      [1] No party has requested oral argument, and the court deems oral argument unnecessary to the disposition of these motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER- 2

## II.   BACKGROUND

**A.   Factual Background[2]**

This case arises out of a failed business relationship.  Mr. Biers alleges that he contracted with Celesteva, a State-licensed recreational marijuana producer, to find a buyer for Celesteva.  (*See* Compl. (Dkt. # 4) ¶¶ 5, 7, 31, 33.)  Under this contract, Mr. Biers was to receive 10% of the purchase price when Celesteva sold.  (*Id.* ¶ 31, 33, Ex. H.)  Mr. Biers alleges that he located several buyers but that Celesteva's board members—Mr. Kirby, Defendant James Harrison VanHoute, Defendant Brett Garrett Erwin,[3] and Ms. Smith—as well as the other Private Defendants deprived him of his commission.  (*See id.* ¶¶ 35-38, 40-43, 51, 53-54, 68, 73.)  Mr. Biers alleges that in doing so Private Defendants, Mr. Harrison, and Mr. VanHoute committed a series of torts and statutory violations, including cultivating and selling a controlled substance, intercepting his communications, and defaming him.  (*See id.* ¶¶ 39, 45-50, 52, 57-60, 62, 64-69, 71-75, 81, 83.)

Mr. Biers' allegations against State Defendants are more difficult to follow.  His theory appears to be that State Defendants enabled Private Defendants to harm him by authorizing and regulating recreational marijuana businesses in violation of federal law.  (*See id.* ¶¶ 2, 24-25, 86, 88, 90-91, 178, 182-88.)  Mr. Biers suggests that if State

---

[2] The court derives this section from Mr. Biers' complaint.  (Compl. (Dkt. # 4).)  However, because Mr. Biers' complaint is 86 pages long, appends nearly 200 pages of exhibits, and is difficult to follow, the court provides only a brief summary of Mr. Biers' allegations here.  The court will discuss additional allegations as necessary in the latter portions of this order.

[3] Mr. VanHoute and Mr. Erwin have not yet appeared in this case.  (*See* Dkt.)

1   Defendants had not sanctioned marijuana businesses, he would not have entered into a

2   relationship with Celesteva and Private Defendants would not have harmed him.  (*See id.*;

3   Biers Resp. at 4-5, 8 ("Thus, but for State Defendant's conduct violating federal law and

4   inviting the public to participate in its 'legal' marijuana scheme, no injury to the Plaintiff

5   results."), 10.)  Mr. Biers also alleges that State Defendants' regulation of recreational

6   marijuana has subjected members of the public, including Mr. Biers, to possible federal

7   prosecution, involuntary servitude, and deprivation of constitutional and civil rights.  (*See*

8   Compl. ¶¶ 2 ("By creating an unlawful statutory and regulatory framework that invites

9   citizens to participate, yet unknowingly attaching criminal status, Board created a system

10  of involuntary servitude or slavery whereby individual citizens provide labor, property

11  and services that benefit the state without receiving just compensation, in violation of the

12  5th, 13th and 14th Amendments of the U.S. Constitution, *inter alia*." (emphasis in

13  original)), 25 ("The issuance of this license to Celesteva, and others, unlawfully violates

14  the Plaintiff's rights under the 5th, 13th and 14th Amendment, Article IV –Privileges and

15  Immunities Clause and the Equal Protection Clause, 42 U.S.C. §1981(a)-(c); 42 U.S.C.

16  §§1983, 1985, 1986 and 1988 viz-a-viz the Supremacy Clause." (emphasis in original)),

17  88, 90-91, 188.)

18  **B.      Procedural Background**

19          On September 23, 2015, Mr. Biers filed a motion for leave to proceed *in forma*

20  *pauperis* ("IFP") and a proposed complaint.  (IFP Mot. (Dkt. # 1); Prop. Compl. (Dkt.

21  # 1-1).)  On September 28, 2015, Magistrate Judge James P. Donohue granted Mr. Biers

22

ORDER- 4

1   leave to proceed IFP.  (IFP Order (Dkt. # 3).)  Mr. Biers filed his complaint that same

2   day.  (Compl. at 1.)

3          In his 86-page complaint, Mr. Biers asserts the following causes of action:  (1)

4   violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

5   U.S.C. § 1961 *et seq.* (*see* Compl. ¶¶ 89-132); (2) violation of the Trafficking Victims

6   Protection Act ("TVPA"), 18 U.S.C. § 1589 *et seq.* (*see* Compl. ¶¶ 133-35); (3) unfair

7   competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (*see* Compl. ¶¶ 136-37);

8   (4) antitrust claims under the Sherman Act, 15 U.S.C. §§ 1-7, and the Clayton Act, 15

9   U.S.C. §§ 12-27 and 29 U.S.C. §§ 52-53 (*see* Compl. ¶¶ 138-48); (5) tortious interference

10  (*see* Compl. ¶¶ 149-54); (6) interception of communications in violation of 18 U.S.C.

11  § 2511 *et seq.* and RCW 9.73.030, .060, and .080 (*see* Compl. ¶¶ 155-66)[4]; (7) violation

12  of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86 (*see* Compl.

13  ¶¶ 167-71); (8) promissory fraud (*see* Compl. ¶¶ 172-76); (8) fraudulent

14  misrepresentation (*see* Compl. ¶¶ 177-88); (9) fraudulent transfers in violation of RCW

15  19.40.041 and RCW 19.40.051 (*see* Compl. ¶¶ 189-98)[5]; (10) false description in

16  violation of the Lanham Act, 15 U.S.C. § 1125 (*see* Compl. ¶¶ 199-201); (11) conversion

17  (*see* Compl. ¶¶ 202-05); and (12) defamation (*see* Compl. ¶¶ 341-43).

18         Mr. Biers implicates some or all Private Defendants in all his claims.  (*See* Compl.

19  ¶¶ 89-201, 341-43.)  However, he mentions State Defendants only in his RICO,

20  _____

21    [4] Mr. Biers divides this cause of action into four claims—two under federal law and two
      under state law.  (*See* Compl. ¶¶ 155-66.)

22    [5] Mr. Biers alleges two fraudulent transfer claims.  (*See* Compl. ¶¶ 189-98.)

1   fraudulent misrepresentation, and false description claims.  (*See id.* ¶¶ 90-91, 177-88,

2   201.)  Mr. Biers seeks damages, restitution, and an accounting, as well as injunctive and

3   declaratory relief.  (*See id.* ¶¶ 207-340.)[6]  He asks the court to declare the State's

4   recreational marijuana system unconstitutional and illegal and to enjoin the continued

5   operation of that system.  (*See id.* ¶¶ 207, 209.)

6          On March 2, 2016, Mr. Biers filed his motion for partial summary judgment or, in

7   the alternative, partial judgment on the pleadings.  (*See* Biers Mot. at 1; Biers Mem.)  He

8   requests a determination that State Defendants are not entitled to immunity under the

9   Eleventh Amendment or state law.  (*See* Biers Mem. at 3.)  On March 9, 2016, State

10  Defendants filed their motion to dismiss all claims against them for lack of standing and

11  failure to state a claim.  (*See* State MTD at 4.)  Private Defendants filed their motion to

12  dismiss the next day.  (*See* Priv. MTD at 1.)  Private Defendants argue that the court

13  should dismiss Mr. Biers' RICO, antitrust, CPA, and TVPA claims against them for lack

14  of standing and failure to state a claim.  (*See id.* at 2.)

15         State and Private Defendants have filed reply memoranda in support of their

16  motions to dismiss and response memoranda in opposition to Mr. Biers' motion for

17  partial summary judgment.  (State Reply (Dkt. # 51); Priv. Reply (Dkt. # 52); State Resp.

18  (Dkt. # 44); Priv. Resp. (Dkt. # 38).)  Mr. Biers has filed a combined response

19  memorandum in opposition to State and Private Defendants' motions to dismiss.  (Biers

20  _____

21         [6] Paragraph 229 in Mr. Biers' complaint is followed by paragraphs 330 through 343.
    (*See* Compl. at 80-85.)  The court assumes this numbering is the result of an error.  However, the
22  court cites to the complaint using the numbering found in the complaint, not the numbering the
    court assumes Mr. Biers intended.

1  Resp.)  He has not, however, filed a reply memorandum in support of his own motion.

2  (*See* Dkt.)  State and Private Defendants' motions to dismiss and Mr. Biers' motion for

3  partial summary judgment are now before the court.

### III.    DISCUSSION

5       The court begins by addressing State and Private Defendants' requests for

6  dismissal based on lack of constitutional standing.  The court then addresses Private

7  Defendants' arguments that Mr. Biers fails to state a claim on which relief can be

8  granted.  Finally, the court will address whether and under what circumstances Mr. Biers

9  should receive leave to amend his complaint.

10  **A.    Constitutional Standing**

11       A challenge to standing under Federal Rule of Civil Procedure 12(b)(1) may be

12  facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where, as here, the

13  challenge is facial—meaning that it is confined to whether the allegations are sufficient

14  "on their face" to invoke federal jurisdiction, *Safe Air for Everyone v. Meyer*, 373 F.3d

15  1035, 1039 (9th Cir. 2004)—the court assumes the allegations to be true and draws all

16  reasonable inferences in the complaining party's favor, *Wolfe v. Strankman*, 392 F.3d

17  358, 362 (9th Cir. 2004).  The court may grant a Rule 12(b)(1) motion when the

18  complaint on its face fails to allege sufficient facts to establish subject matter jurisdiction.

19  *See Safe Air for Everyone*, 373 F.3d at 1039.

20       Article III of the United States Constitution limits federal court jurisdiction to

21  cases and controversies.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).

22  Standing is a "core component" of a case or controversy.  *Id*. at 560.  The party seeking

1    to invoke federal jurisdiction bears the burden of establishing all three elements of

2    constitutional standing: (1) that it suffered an "injury in fact" that is "concrete and

3    particularized" and "actual or imminent," (2) that a "causal connection between the injury

4    and the conduct complained of" exists that is fairly traceable to the opposing party's

5    action, and (3) that the injury likely can be redressed by a favorable decision.  *Id.* at

6    560-61.  In the absence of constitutional standing, a federal court lacks subject matter

7    jurisdiction over the claim.  *Righthaven, LLC. v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir.

8    2013).

9        1.   Claims against State Defendants

10       Mr. Biers asserts claims against State Defendants for violation of RICO,

11   fraudulent misrepresentation, and false designation under the Lanham Act.  (*See* Compl.

12   ¶¶ 90-91, 177-88, 201.)  As discussed above, the thrust of these claims appears to be that

13   Private Defendants would not have harmed Mr. Biers but for State Defendants'

14   regulation of recreational marijuana.  (*See id.* ¶¶ 2, 24-25, 86, 88, 90-91, 178, 182-88;

15   Biers Resp. at 4-5, 8, 10); *supra* § II.A.  Mr. Biers also alleges that State Defendants'

16   regulation of recreational marijuana has violated his constitutional rights and subjected

17   him to involuntary servitude and the possibility of federal prosecution.  (*See* Compl. ¶¶ 2,

18   25, 88, 90-91, 188.)  State Defendants argue that Mr. Biers has not alleged any of the

19   elements of Article III standing.  (State MTD at 4-8.)

20       *a.  Injury-in-Fact*

21       To have Article III standing, "the plaintiff must have suffered an injury in fact—an

22   invasion of a legally protected interest which is (a) concrete and particularized, and (b)

1  actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal

2  citations, quotations, and footnote omitted); *see also Clapper v. Amnesty Int'l USA*, ---

3  U.S. ---, 133 S. Ct. 1138, 1147 (2013).  Some of Mr. Biers' alleged injuries meet this

4  requirement—namely, the financial, emotional, and reputational harms Mr. Biers

5  allegedly suffered because Private Defendants did not pay his commission, defamed him,

6  and otherwise mistreated him.  (*See* Compl. ¶¶ 7, 13, 33, 113, 220, 343; *see also* Biers

7  Resp. at   5-6, 9 ("Defendant's victim, the Plaintiff, . . . exchanged value, (labor and

8  time), and suffered extensive losses because of the unlawful and fraudulent practices of

9  the Defendants."), 10 ("In addition to the pecuniary losses, the Plaintiff suffered a

10  tremendous emotional injury when he was unable to afford vital medical treatment for

11  himself and his terminally ill emotional support animal and family companion as a result

12  of Defendant's conduct.").)

13          The rest of Mr. Biers' alleged injuries do not satisfy Article III's injury-in-fact

14  requirement.  Mr. Biers' allegations of "involuntary servitude," "deprivation of . . . civil

15  and constitutional rights," and "threat of federal criminal sanctions" fall into this

16  category.  (Compl. ¶¶ 2, 25, 88, 90-91, 188.)  Mr. Biers merely states that injuries of this

17  type have occurred; he offers no factual allegations from which the court could

18  reasonably infer concrete, particularized, and actual or imminent injury.  *See Lujan*, 504

19  U.S. at 560; *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (noting that a

20  plaintiff may not "rely on a bare legal conclusion to assert injury-in-fact").  Mr. Biers

21  therefore lacks standing to pursue claims against State Defendants—or any other

22  Defendants—based on such injuries.

1    In his response, Mr. Biers argues that because RICO authorizes individual

2    plaintiffs to sue as private attorneys general, he has standing to pursue "public interest

3    injuries."  (Biers Resp. at 7 ("As *ex rel* civil <u>RICO</u> representative on behalf of the United

4    States, the Plaintiff contends he is permitted to assert public interest injuries."); *see also*

5    *id.* at 2-3.)  The court disagrees.  A private plaintiff has no standing to sue for generalized

6    grievances.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998) (holding the

7    plaintiff lacked standing where it sought "not remediation of its own injury . . . but

8    vindication of the rule of law—the 'undifferentiated public interest' in faithful execution

9    of [a law]"); *Lujan*, 504 U.S. at 573-74.  With respect to his allegations of involuntary

10   servitude, deprivation of civil rights, and threatened federal prosecution, Mr. Biers fails to

11   allege facts showing that he personally suffered a particularized, concrete injury.  (*See*

12   Compl. ¶¶ 2, 25, 88, 90-91, 188.)  He cannot escape the consequences of his failure by

13   characterizing these injuries as injuries to the public in general.  *See Steel Co.*, 523 U.S.

14   at 106; *Lujan*, 504 U.S. at 573-74.  Accordingly, Mr. Biers lacks standing to sue for these

15   injuries.

16        *b.  Causation*

17        Article III standing also requires that the plaintiff's injury-in-fact be "fairly

18   traceable" to the "complained-of conduct of the defendant."  *Steel Co.*, 523 U.S. at 103.

19   As against State Defendants, Mr. Biers' theory of causation appears to be that if not for

20   the State's authorization and regulation of recreational marijuana, he would not have

21   contracted with Celesteva and thus Private Defendants would not have deprived him of

22   his commission, intercepted his communications, and defamed him.  (*See* Compl. ¶¶ 2,

1   24-25, 86, 88, 90-91, 178, 182-88; Resp. at 4-5, 8, 10.)  This chain of causation is

2   inadequate to establish standing.

3        As the Supreme Court has explained:

4        When . . . a plaintiff's asserted injury arises from the government's
         allegedly unlawful regulation (or lack of regulation) of *someone else*, . . .
5        causation and redressability . . . ordinarily hinge on the response of the
         regulated (or regulable) third party to the government action or inaction—
6        and perhaps on the response of others as well.

7   *Lujan*, 504 U.S. at 562 (emphasis in original); *see also Novak v. United States*, 795 F.3d

8   1012, 1019 (9th Cir. 2015) (quoting the above language from *Lujan*).  In such cases,

9   "more particular facts are needed to show standing."  *Mendia v. Garcia*, 768 F.3d 1009,

10  1013 (9th Cir. 2014) (citing *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th

11  Cir. 2002)).  "To plausibly allege that the injury was 'not the result of the *independent*

12  *action* of some third party,' the plaintiff must offer facts showing that the government's

13  unlawful conduct 'is at least a substantial factor motivating the third parties' actions.'"

14  *Id.* (emphasis in original) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997) and *Tozzi*

15  *v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001)).  Mr. Biers

16  offers no facts showing that State Defendants' regulation of recreational marijuana was a

17  substantial factor motivating Private Defendant to deprive Mr. Biers of his commission,

18  intercept his communications, defame him, or otherwise inflict any injury-in-fact on him.

19  *See also Maya*, 658 F.3d at 1068 (quoting *United States v. Students Challenging*

20  *Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689-90 (1973)) (explaining that

21  a plaintiff may not "engage in an 'ingenious academic exercise in the conceivable' to

22  explain how [the] defendants' actions caused his injury").

1    At most, Mr. Biers alleges State Defendants' regulation of recreational marijuana

2    was a necessary precondition to the injury he suffered.  He alleges that he suffered harm

3    through his business dealings with Celesteva, a recreational marijuana producer, and

4    suggests that he would never have entered into business with Celesteva if State

5    Defendants had not sanctioned recreational marijuana production.  (*See* Compl. ¶¶ 2,

6    24-25, 86, 88, 90-91, 178, 182-88; Resp. at 4-5, 8, 10.)  Mr. Biers provides no

7    authority—and the court has located none—for the proposition that this sort of simplistic

8    but-for causation meets Article III's causation requirement.  *Cf. Huddy v. F.C.C.*, 236

9    F.3d 720, 724 (D.C. Cir. 2001) (questioning whether basic "but for" causation is

10   sufficient to confer constitutional standing when the challenged action lacks "any

11   inherent tendency . . . to produce the alleged injury," and the causal link is merely "the

12   passage of time" since the challenged action "coupled with . . . fortuities").  Courts have

13   found standing for a plaintiff to sue the government where the challenged government

14   action authorized the allegedly illegal conduct that caused the plaintiff's injuries.  *See*

15   *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 440-42 (D.C. Cir. 1998)

16   (collecting cases).  However, in those cases, the government authorized the particular

17   conduct that injured the plaintiff.  *See id.*  Here, State Defendants authorized only the

18   type of business in which Private Defendants engaged.  State Defendants did not

19   authorize the particular conduct that allegedly harmed Mr. Biers—depriving a broker of

20   his commission, intercepting communications, and defamation.

21   In sum, Mr. Biers lacks standing to pursue his claims against State Defendants

22   because he fails to plead injury-in-fact that is fairly traceable to State Defendants' alleged

1  misconduct.  The court therefore GRANTS State Defendants' motion and DISMISSES

2  Mr. Biers' claims against State Defendants for lack of Article III standing.  In light of this

3  ruling, the court DENIES as moot Mr. Biers' motion for partial summary judgment on

4  the issue of State Defendants' immunity from suit.  (Biers Mot.)

5       2.  Claims against Private Defendants

6       Private Defendants move to dismiss Mr. Biers' RICO, antitrust, CPA, and TVPA

7  claims for lack of standing.  (Priv. MTD at 2.)  However, Private Defendants do not

8  substantively address Article III standing.  (*See id.* at 8-20.)  Although they purport to

9  seek dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III

10  standing, the only forms of standing they substantively address are zone-of-interests and

11  statutory standing.  (*See id.*)  Neither of those concepts implicates constitutional standing.

12  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S. Ct. 1377,

13  1386-87 (2014); *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir.

14  2008).  Rather, when raised at the pleadings stage they concern whether the plaintiff has

15  stated a claim upon which relief can be granted.  *See Canyon Cty.*, 519 F.3d at 974 n.7;

16  *Chandler & Newville v. Quality Loan Serv. Corp. of Wash.*, No. 03:13-cv-02014-ST,

17  2014 WL 2526564, at *4 (D. Or. June 3, 2014).  The court therefore addresses those

18  concepts within the rubric of Private Defendants' request for dismissal under Federal

19  Rule of Civil Procedure 12(b)(6).

20       Nevertheless, because Article III standing is a jurisdictional prerequisite, the court

21  briefly addresses whether Mr. Biers pleads facts sufficient to establish Article III standing

22  for his RICO, antitrust, CPA, and TVPA claims.  *See Chapman v. Pier 1 Imports (U.S.)*

1 | *Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (noting that federal courts are required to examine

2 | jurisdictional issues such as standing *sua sponte*).  Only Article III's causation

3 | requirement is potentially at issue here.  As discussed above, Mr. Biers adequately pleads

4 | injury-in-fact, though only in the form of his lost commission and the emotional distress

5 | and reputational harm he suffered as a result of Private Defendants mistreating him.  *See*

6 | *supra* § III.A.1.a.  At this stage in the proceedings, the court concludes that Mr. Biers'

7 | requested damages would likely redress his injuries.  (Compl. ¶¶ 220-22, 229.)  Thus, the

8 | court examines whether Mr. Biers has pleaded facts showing that his injury-in-fact is

9 | fairly traceable to conduct complained of in his RICO, antitrust, CPA, and TVPA claims.

10 | *See Lujan*, 504 U.S. at 560-61.  The court addresses each claim in turn.

11 |        *a.  RICO*

12 |        In articulating his RICO claim, Mr. Biers alleges that Private Defendants engaged

13 | in a variety of misconduct.  (*See* Compl. ¶¶ 92-117.)  For example, he alleges that several

14 | Private Defendants lied to him and a potential purchaser of Celesteva—a Mr. Peters—

15 | about who owned Celesteva.  (*See id.*  ¶¶ 109-11.)  Mr. Biers also alleges that Mr. Kirby

16 | threatened to harm him (*see id.* ¶ 109), and he suggests that Private Defendants engaged

17 | in this conduct to stop the sale of Celesteva to Mr. Peters and deprive Mr. Biers of his

18 | commission (*see id.* ¶¶ 108-11).  Construing Mr. Biers' allegations in the light most

19 | favorable to him, the court finds he has adequately alleged that his injuries are fairly

20 | traceable to at least some of the conduct he complains of in his RICO claim.

21 | //

22 | //

1         *b.  Antitrust*

2         In articulating his antitrust claim, Mr. Biers alleges, among other things, that

3 Private Defendants placed improper conditions on the purchase of Celesteva's business

4 license, including the condition that purchasers not deal with Mr. Biers.  (*See* Compl.

5 ¶¶ 139, 142, 146.)  Mr. Biers' allegations indicate that Private Defendants undertook

6 these actions to prevent the sale of Celesteva and deprive Mr. Biers of his commission.

7 (*See id.*)  Such allegations are sufficient to support the causation element of Article III

8 standing at this stage of proceedings.

9         *c.  CPA*

10         Like his antitrust claim, Mr. Biers' CPA claim appears to rest in part on the

11 allegation that Private Defendants placed improper conditions on the sale of Celesteva.

12 (*See id.* ¶ 169.)  As with the antitrust claims, these allegations are sufficient to support the

13 causation element Article III standing at this stage of proceedings.

14         *d.  TVPA*

15         Mr. Biers bases his TVPA claim on the allegation that Private Defendants

16 obtained his services through threats of harm.  (Compl. ¶ 134.)  This allegation is

17 sufficient at this stage of proceedings to show that Mr. Biers' alleged injuries are fairly

18 traceable to Private Defendants' alleged misconduct.[7]

19       ——————————————

20         [7] Mr. Biers also alleges that several Private Defendants violated the TVPA by travelling to California and Central America to "participate in sexual exploitation of minor children."

21 (Compl. ¶ 134.)  The court dismisses this aspect of Mr. Biers' TVPA claim because Mr. Biers lacks standing to assert a claim for injuries to third parties.  *See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (quoting *Valley Forge Christian Coll. v. Americans United for*

22 *Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982)) (internal citations omitted)

1    In sum, the court concludes that Mr. Biers has pleaded sufficient facts to establish

2    Article III standing to bring his RICO, antitrust, CPA, and TVPA claims against Private

3    Defendants.

4    **B.      Failure to State a Claim**

5    When considering a motion to dismiss under Federal Rule of Civil Procedure

6    12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

7    party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

8    2005). The court must accept all well-pleaded allegations of material fact as true and

9    draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v.*

10   *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to

11   dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

12   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

13   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus*

14   *VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility

15   when the plaintiff pleads factual content that allows the court to draw the reasonable

16   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

17   The court, however, need not accept as true a legal conclusion presented as a

18   factual allegation. *Id.* at 678. Although the pleading standard announced by Federal

19   Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more

20   _____

21   ("Ordinarily, of course, a litigant 'must assert his own legal rights and interests, and cannot rest
      his claim to relief on the legal rights or interests of third parties.' This is generally so even when
22   the very same allegedly illegal act that affects the litigant also affects a third party.").

1    than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing

2    *Twombly*, 550 U.S. at 555).  A pleading that offers only "labels and conclusions or a

3    formulaic recitation of the elements of a cause of action" will not survive a motion to

4    dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  The court may consider the

5    pleadings, documents attached to the pleadings, and documents incorporated by reference

6    in the pleadings.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van*

7    *Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)).

8          Private Defendants ask the court to dismiss Mr. Biers' RICO, antitrust, CPA, and

9    TVPA claims against them for failure to state a claim.  (Priv. MTD at 2, 8-20.)  The court

10   addresses each claim in turn.

11        1.  RICO

12         A RICO violation occurs when the defendant participated in "(1) the conduct of

13   (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering

14   activity or collection of unlawful debt." *Eclectic Props. East, LLC v. Marcus &*

15   *Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 1997) (citing 18 U.S.C. § 1962(c)).  The

16   statute defines "racketeering activity" as "a number of specific criminal acts under federal

17   and state law." *Canyon Cty.*, 519 F.3d at 972 (citing 18 U.S.C. § 1961(1)).  Mr. Biers

18   bases his RICO claim on allegations that Private Defendants violated numerous state and

19   federal statutes.  (*See* Compl. ¶¶ 90-117; *see also* Biers Resp. at 7-9.)  Private Defendants

20   acknowledge that some of these alleged predicate acts constitute racketeering activity—

21   namely, violation of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*;

22

1  violation of the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*; and mail and wire

2  fraud.  (Priv. MTD at 9.)

3        Private Defendants argue, however, that many of the alleged predicate acts do not

4  meet the statutory definition of racketeering activity.  (*Id.* at 10-11.)  Private Defendants

5  place violations of the following statutes in this category:  18 U.S.C. § 371 (conspiracy to

6  defraud the United States); 26 U.S.C. §§ 7201, 7206, 7207 (tax evasion and fraud); RCW

7  21.20.010 (the Securities Act of Washington); RCW 9.38.020 (false representation

8  concerning title to property); RCW 9.45.060 (concerning encumbered, leased, or rented

9  personal property); and RCW ch. 19.86 (the CPA).  (Priv. MTD at 11 (citing 18 U.S.C.

10 § 1961(1)).)  Mr. Biers offers no response to this portion of Private Defendants' motion

11 (*see* Biers Resp.), and the court agrees with Private Defendants.  Mr. Biers fails to state a

12 RICO claim with respect to the above-listed predicate offenses.  *See* 18 U.S.C. § 1961(1).

13       Private Defendants next argue that Mr. Biers fails to plausibly plead that he has

14 statutory standing to pursue RICO claims based on violation of the CSA, violation of the

15 BSA, and mail and wire fraud.  (*See* Priv. MTD at 9-10.)  To have statutory standing, "a

16 civil RICO plaintiff must show: (1) that his alleged harm qualifies as an injury to his

17 business or property; and (2) that his harm was 'by reason of' the RICO violation, which

18 requires the plaintiff to establish proximate causation."  *Canyon Cty.*, 519 F.3d at 972

19 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Injury to business

20 or property requires "harm to a specific business or property interest" and "concrete

21 financial loss."  *Id.* at 975 (citing *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785

22 (9th Cir. 1992) and *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005)).  Proximate

1    causation, in turn, requires "some direct relation between the injury asserted and the

2    injurious conduct alleged.  A link that is 'too remote,' 'purely contingent,' or 'indirec[t]'

3    is insufficient." *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) (quoting

4    *Holmes*, 503 U.S. at 268, 271, 274) (alteration in original).  This standard is more

5    rigorous than Article III's causation requirement.  *Canyon Cty.*, 519 F.3d at 974 n.7.

6         Private Defendants argue that Mr. Biers' alleged emotional distress does not

7    constitute an injury to Mr. Biers' business or property.  (Priv. Reply at 4.)  The court

8    agrees.  Emotional distress is not a qualifying injury under RICO.  *See Diaz*, 420 F.3d at

9    900.  Therefore, the court dismisses Mr. Biers' RICO claims to the extent he seeks

10   damages for emotional distress due to RICO violations.

11        In addition, Private Defendants argue that Mr. Biers fails to plausibly plead that

12   the alleged CSA and BSA violations and mail and wire fraud proximately caused Mr.

13   Biers' financial losses.  (Priv. MTD at 9-10.)  The court agrees.  Mr. Biers alleges that

14   Private Defendants violated the CSA by producing and selling marijuana, and violated

15   the BSA by using banks in the course of an illegal marijuana business.  (*See* Compl. ¶¶ 5,

16   91, 101, 105, 114, 117.)  However, he fails to plead facts showing a direct causal

17   connection between these alleged illegal acts and the loss of his commission.  (*See id.*)  In

18   determining proximate cause under RICO, courts' "general tendency . . . is not to go

19   beyond the first step" in the causal chain.  *Hemi Grp.*, 559 U.S. at 10 (quoting *Holmes*,

20   593 U.S. at 271-72).  Mr. Biers' allegations make clear that numerous additional,

21   independent acts beyond simply running Celesteva and using banks were required in

22   order to deprive him of his commission.  (*See* Compl. ¶¶ 39, 45-50, 52, 57-60, 62, 64-69,

ORDER- 19

1   71-75, 81, 83.)  Accordingly, Mr. Biers fails to establish statutory standing for his CSA-

2   and BSA-based RICO claims.  *See Hemi Grp.*, 559 U.S. at 9; *Canyon Cty.*, 519 F.3d at

3   972; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (finding no

4   proximate causation where the cause of the plaintiff's harm was "a set of actions . . .

5   entirely distinct from the alleged RICO violation").

6          Mr. Biers' mail- and wire-fraud-based RICO claim fares no better.  Private

7   Defendants argue in their motion that Mr. Biers fails to plausibly plead that wire or mail

8   fraud occurred and, even if it did, that it proximately caused Mr. Biers' financial losses.

9   (*See* Priv. MTD at 10.)  In his response, Mr. Biers offers only one specific citation in

10  support of his mail- and wire-fraud-based RICO claim, without any elaboration.  (*See*

11  Biers Resp. at 9 (citing paragraph 95 of the complaint with the accompanying

12  parenthetical "(Mail and Wire Fraud)").)  The cited paragraph contains allegations that

13  several Private Defendants falsely claimed Mr. Tighe was their lawyer and "used the

14  [United States Postal Service], the phone and the internet to submit documents to the

15  Board and Washington necessary to initiate a marijuana business." (Compl. ¶ 95.)  Mr.

16  Biers does not explain how this conduct proximately caused his financial injuries.[8]  (*See*

17  Biers Resp. at 9.)  Moreover, the court cannot reasonably infer proximate causation from

18  Mr. Biers' allegations.

19         Mr. Biers defends his RICO claims against Defendants' motions primarily with

20  conclusory statements, citations to large swaths of his complaint, and citations without

21  _____

22  [8] Nor does Mr. Biers articulate how this conduct constitutes wire or mail fraud.  (*See* Biers Resp. at 9.)

ORDER- 20

accompanying substantive argument.[9]  Mr. Biers' complaint is lengthy, and the contours

of his claims and legal theories are often difficult to discern.  (*See* Compl.)  Because Mr.

Biers is proceeding pro se, the court construes his complaint and other filings liberally.

*Bernhardt v. L.A. Cty.*, 339 F.3d 920, 925 (9th Cir. 2003).  However, the court is under

no obligation to—and will not—scour large portions of Mr. Biers' complaint to find

support for his conclusory statements; nor will the court attempt on its own to piece

together plausible claims from Mr. Biers' voluminous allegations.  *See Roger v.*

---

[9] For example, Mr. Biers states:

> Plaintiff's factual allegations against the Defendants includes attempts and complete instances of theft; bribery; extortion; leading organized crime; money laundering; assault; patter of equity skimming; commercial telephone solicitation; trafficking in insurance claims; unlawful practice of law; commercial bribery extortionate extension of credit and advancing money for use in extortionate extension of credit.  Id. e.g. Complaint at 19-20¶50(threats leading to extortion); 22 ¶59-60 (threatened termination for failing to extort);  22-23 ¶60 and 24¶65 (extortion attempts of Peters); 34-5 ¶95 (Mail and Wire Fraud); 39 ¶109(threaten to kill Plaintiff interfering with wire fraud and extortion of Peters) and ¶110(attempt to extort or commercial bribery using false or fraudulent means), and 50 ¶143 (attempts to extort potential purchasers by Kirby).

(Biers Resp. at 9.)

> [T]he one thing the Complaint contains is sufficient factual development, (directly, by adoption and inference), showing injury-in-fact arising from Defendant's violations.  See gen. Complaint; also "Factual Allegations" 13-28, 30-43 and 47-69 (threats and acts involving bribery, extortion or dealing in a controlled substances;  mail fraud;  wire fraud;  financial institution fraud;  obstruction of justice;  obstruction of state or local law enforcement;  tampering with a witness, victim or an informant;  retaliating against a witness, victim or informant;  peonage, slavery or trafficking of people;  interference with commerce or extortion;  racketeering;  money laundering;  fraud;  manufacturing, importing, receiving, concealment, buying, selling or otherwise dealing in a controlled substance;  violations of federal banking laws, pursuant to §1961(A)).  As alleged Defendant's conduct constituted a scheme to defraud the Plaintiff, where the Defendants used the wires in furtherance of that scheme, with the specific intent to deceive or defraud.  See . . . e.g. Complaint at 13-47 and Exhibits . . . .

(Biers Resp. at 7; *see also id.* at 6 n.4 ("For brevity the Plaintiff re-alleges and incorporates by reference here the allegations contained in Plaintiff's complaint, pages including Exhibits.").)

1  *Apartment Mgmt. Consultants, LLC*, No. 2:13-cv-01646-APG-VCF, 2013 WL 6693485,

2  at *2 (D. Nev. Sept. 17, 2013) (citing *Hughes v. Rowe*, 449 U.S. 5, 10 n.7 (1980) and *Nw.*

3  *Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994)) ("Although pleadings produced

4  by pro se plaintiffs are held to 'less stringent standards' than pleadings drafted by

5  attorneys, it is not the court's role to sift through a complaint in search of factual

6  assertions that could, in theory, support one legal claim or another." (internal citation

7  omitted)); *Cardin v. Wilmington Fin., Inc.*, No. CV-12-08251-PCT-DGC, 2013 WL

8  1123815, at *1 (D. Ariz. Mar. 18, 2013) (quoting *Mansour v. Cal-Western Reconveyance*

9  *Corp.*, No. CV-09-37-PHX-DGC, 2009 WL 2132695, at *3 (D. Ariz. July 15, 2009))

10  ("When ruling on a motion to dismiss 'the Court [is] not obligated to search for legal

11  theories not clearly laid on [sic] in Plaintiff's response to the motion or his . . .

12  complaint.'" (first alteration in original)).  Having rejected the formulations of Mr. Biers'

13  RICO claim that Mr. Biers alleged in his complaint or properly presented in his briefing,

14  the court declines to address any other possible permutations of that claim[10] and

15  dismisses Mr. Biers' RICO claim against Private Defendants for failure to state a claim.

16      2.  Antitrust claims

17      Private Defendants argue that Mr. Biers has not plausibly alleged antitrust claims

18  because he fails to plead facts showing any antitrust violations or antitrust standing.  (*See*

19

20  _____

21      [10] The court cautions Mr. Biers that in the future the court will ignore citations to large
   portions of the record and conclusory statements unaccompanied by specific citations and

22  nonconclusory argument.  *See supra* n.9; *Roger*, 2013 WL 6693485, at *2; *Savage v. Dickinson*,
   No. 2:11-cv-1652 MCE EFB P, 2013 WL 78475, at *3 (E.D. Cal. Jan. 4, 2013).

1   Priv. MTD at 12-18.)  Mr. Biers offers no response to this argument.[11]  (*See* Biers Resp.)

2   The court agrees with Private Defendants that Mr. Biers fails to plausibly plead any

3   antitrust claims.  Accordingly, the court dismisses Mr. Biers' antitrust claims for failure

4   to state a claim.

5        Mr. Biers advances the following antitrust claims:  unlawful tying (*see* Compl.

6   ¶¶ 139, 143, 146 (citing 15 U.S.C. §§ 1-3, 14) (alleging that Private Defendants

7   conditioned purchase of Celesteva's business license on acceptance of "lease(s),

8   equipment and maintenance costs")); price discrimination in violation of 15 U.S.C. § 13

9   (*see id.* ¶ 141 (alleging that several Private Defendants "engaged in price discrimination

10   between different purchasers of Celesteva, and lessees of Canopy Park and [Kirby

11   Properties]")); interlocking directorates in violation of 15 U.S.C. § 19 (*see id.* ¶ 140

12   (alleging that Mr. Kirby sat on boards of "two or more competing businesses")); 

13   monopolistic conduct (*see id.*  ¶ 147 (alleging that Private Defendants "were attempting

14   to create an unlawful monopoly in Mason County by coordinating the purchases of

15   marijuana licenses, sales of real property leases to marijuana licensees [sic]")); and group

16   boycott (*see id.* ¶¶ 142, 146 (citing 15 U.S.C. § 14) (alleging that several Private

17

18   _____

19   [11] In fact, Mr. Biers does not respond to many of State and Private Defendants'
   arguments.  (*See* Biers Resp.)  The court has largely overlooked this failure and evaluated the
20   merits of Defendants' motions; however, having expressly cautioned Mr. Biers of his
   obligations, *see supra* n.10, the court may not be so forgiving going forward.  If Mr. Biers fails
21   to respond to Defendants' arguments in the future, the court may interpret Mr. Biers' silence as
   an admission that the unaddressed arguments have merit and grant Defendants' corresponding
   requests without further analysis.  *See* Local Rules W.D. Wash. LCR 7(b)(4); *Nielsen v. Unum
22   Life Ins. Co. of Am.*, 58 F. Supp. 3d 1152, 1155-56 (W.D. Wash. 2014).

1    Defendants conditioned the sale of Celesteva on potential buyers agreeing not to deal

2    with Mr. Biers)).  None of these claims are sufficiently pleaded.

3         Mr. Biers' tying claim fails because he relies on the tying of a business license, not

4    the tying of tangible goods, and pleads no facts showing that Private Defendants possess

5    market power in the tying product market.  (*See id.* ¶¶ 139, 143, 146); *Moore v. James H.*

6    *Matthews & Co.*, 550 F.2d 1207, 1213-14 (9th Cir. 1977) (setting forth the requirements

7    for tying claims under 15 U.S.C. §§ 1, 14); *Tele Atlas N.V. v. Navteq Corp.*, 397 F. Supp.

8    2d 1184, 1192-93 (N.D. Cal. 2005).  Mr. Biers' price discrimination claim is also

9    deficient.  To state a price discrimination claim, the plaintiff must plead facts showing (1)

10   two or more contemporaneous sales by the same seller (2) at different prices (3) of

11   commodities of like grade and quality (4) where at least one of the sales was made in

12   interstate commerce, (5) the discrimination had the requisite effect on competition

13   generally, and (6) the discrimination caused injury to the plaintiff.  *Rutledge v. Elec. Hose*

14   *& Rubber Co.*, 511 F.2d 688, 677 (9th Cir. 1975).  Mr. Biers indicates that Private

15   Defendants offered Celesteva to various purchasers for different prices and offered

16   varying lease terms to potential tenants.  (*See* Compl. ¶ 141.)  However, those actions do

17   not constitute multiple contemporaneous sales of similar commodities for different

18   prices, and Mr. Biers pleads no facts showing a sale in interstate commerce or the

19   requisite effect on competition.

20        Similarly, Mr. Biers fails to state a claim for interlocking directorates.  Such a

21   claim requires factual allegations showing that (1) one person serves as a director for two

22   or more business corporations; (2) the combined capital, surplus, and undivided profits of

1  any one of the corporations exceeds one million dollars; (3) each corporation is engaged

2  in interstate commerce; and (4) the corporations compete with each other.  *Pocahontas*

3  *Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 216 (4th Cir. 1987); *see also*

4  *TRW, Inc. v. FTC*, 647 F.2d 942, 945 n.3 (9th Cir. 1981).  To support this claim Mr. Biers

5  alleges that Mr. Kirby "sat as a director . . . on two or more competing businesses that

6  merged or created an unlawful trust . . . in violation of 15 U.S.C. § 19." (Compl. ¶ 140.)

7  That allegation is conclusory and fails to establish the elements of an interlocking

8  directorates claim.

9          Mr. Biers also has not pleaded facts sufficient to support a monopoly claim.

10  Instead, he offers the conclusory statement that Private Defendants "have created or were

11  attempting to create an unlawful monopoly in Mason County by coordinating the

12  purchase of marijuana licenses." (Compl. ¶ 147); *see Alaska Airlines, Inc. v. United*

13  *Airlines, Inc.*, 948 F.2d 536, 541-42 (9th Cir. 1991) (setting forth the elements of

14  monopoly and attempted monopoly claims).  Finally, Mr. Biers' has not plausibly

15  pleaded a group boycott in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  "A

16  plaintiff may allege violations of Section 1 under one or more of the following 'three

17  rules of analysis: the rule of reason, per se, or quick look.'"  *Bay Area Surgical Mgmt.*

18  *LLC v. Aetna Life Ins. Co.*, --- F. Supp. 3d ---, No. 15-cv-01416-BLF, 2015 WL

19  10457212, at *3 (N.D. Cal. Sept. 21, 2015) (quoting *United States v. eBay, Inc.*, 968 F.

20  Supp. 2d 1030, 1037 (N.D. Cal. 2013)).  Mr. Biers fails to identify which approach he is

21  proceeding under (*see* Biers Resp.; Compl.), and his factual allegations do not plausibly

22  show a violation of Section 1 of the Sherman Act under any approach, *see Bay Area*

1  *Surgical Mgmt.*, 2015 WL 10457212, at *3 (outlining the requirements for each approach

2  in a case involving a group boycott claim).[12]

3      3. CPA

4      Private Defendants argue that Mr. Biers' CPA claims are subject to the same

5  standards as his federal antitrust claims and should be dismissed for the same reasons.

6  (*See* Priv. MTD at 13 & n.14.)  Mr. Biers bases his CPA claims on antitrust provisions in

7  the CPA that parallel several of the federal antitrust laws discussed above.  (*See* Compl.

8  ¶¶ 169-70 (citing RCW 19.86.050 (prohibiting transactions conditioned on an agreement

9  not to use a competitor's goods or services), RCW 19.86.030 (prohibiting contracts,

10  combinations, and conspiracies in restraint of trade), and RCW 19.86.040 (prohibiting

11  monopolies and attempted monopolies)).)

12

13  _____

14  [12] Even if Mr. Biers' allegations were sufficient to show antitrust violations, Mr. Biers'
antitrust claims would fail because he has not plausibly pleaded that he has antitrust standing.
"Only those who meet the requirements for 'antitrust standing' may pursue a claim under the
15  Clayton Act; and to acquire 'antitrust standing,' a plaintiff must adequately allege and eventually
prove 'antitrust injury.'"  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1007 (9th
Cir.) (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054-55 (9th Cir.
16  1999)), *amended on denial of rehearing by* 352 F.3d 367 (9th Cir. 2003).

17          Antitrust injury is made up of four elements: "(1) unlawful conduct, (2) causing
          an injury to the plaintiff, (3) that flows from that which makes the conduct
          unlawful, and (4) that is of the type the antitrust laws were intended to prevent."
18          In addition, we impose a fifth requirement, that "the 'injured party be a participant
          in the same market as the alleged malefactors.'"

19  *Id.* at 1008 (internal citation omitted) (quoting *Am. Ad Mgmt.*, 190 F.3d at 1055, 1057) ("[T]he
party alleging the injury must be either a consumer of the alleged violator's goods or services or
20  a competitor of the alleged violator in the restrained market.").  In addition to the deficiencies
already identified, Mr. Biers has not plausibly alleged at least the third, fourth, and fifth elements
21  of antitrust injury for any of his antitrust claims.  *See Glen Holly*, 343 F.3d at 1007-08; *see also
In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084
22  (N.D. Cal. 2007) (explaining that antitrust standing is a requirement for "all private antitrust suits
seeking monetary damages under the federal antitrust statutes").

1   The court need not determine the extent to which federal law provides guidance

2   here because Mr. Biers' CPA claims consist almost entirely of legal conclusions that

3   parrot the statutory language.  (*See* Compl. ¶¶ 169 ("Defendants unlawfully leased,

4   entered or made sales contracts for sales of goods, wares, merchandise, supplies, or other

5   commodities, or services for the use, consumption, enjoyment or resale, or fix a price

6   charged therefor, or discount therefrom, or rebate upon, such price, on condition,

7   agreement, or understanding that the lessee or purchaser thereof shall not use or deal in

8   the goods, wares, merchandise, supplies, or other commodity or service of a competitor

9   or competitors of the lessor or seller in violation of RCW 19.86.050."), 170 ("Defendants

10  unlawfully acquired, directly or indirectly, the whole or any part of Celesteva stock or

11  assets to substantially lessen competition or tend to create a monopoly in the commercial

12  marijuana industry.  Defendants agreed, conspired and participated in unlawful, unfair or

13  deceptive acts or practices in the conduct of trade or commerce, in violation of RCW

14  19.86.020, .030 and .040, and caused damage to Plaintiff.").)  Conclusory allegations of

15  this type do not allow the court to understand the nature of Mr. Biers' CPA claims, let

16  alone infer those claims are plausible.  Accordingly, court dismisses Mr. Biers' CPA

17  claim for failure to state a claim.

18      4.  TVPA

19      Mr. Biers brings a claim under the forced labor provision of the TVPA, 18 U.S.C.

20  § 1589(a).  (Compl. ¶¶ 133-35.)  Section 1589(a) prohibits "knowingly provid[ing] or

21  obtain[ing] the labor or services of a person" by force, threats of force, physical restraint,

22  threats of physical restraint, serious harm, threats of serious harm, abuse or threatened

1  abuse of law or legal process, or "by means of any scheme, plan, or pattern intended to

2  cause the person to believe that, if that person did not perform such labor or services, that

3  person or another person would suffer serious harm or physical restraint."  18 U.S.C.

4  § 1589(a); *see also id.* § 1595(a) (authorizing victims to bring civil suits).  Private

5  Defendants argue that Mr. Biers fails to state a TVPA claim.  (*See* Priv. MTD at 19-20.)

6  The court agrees.

7          In support of his TVPA claim Mr. Biers alleges,

8          Defendants knowingly obtained the labor or services of the Plaintiff by
           threats of force, threats of serious harm and/or abuse or threatened abuse of
9          the law or legal process or by means of any scheme, plan or pattern
           intended to cause the Plaintiff to believe that if performance or labor did
10         not occur the Plaintiff would suffer serious harm or physical restraint.

11  (Compl. ¶ 134.)  That allegation is conclusory and therefore not entitled to a presumption

12  of truth.  As Private Defendants point out, Mr. Biers also alleges that Mr. Kirby

13  threatened him in an April 4, 2015, phone call.  (*See* Priv. MTD at 20; Compl. ¶ 57.)  Mr.

14  Biers indicates, however, that the purpose of this alleged threat was to stop him from

15  working, not to force him to work.  (*See* Compl. ¶ 57 ("Kirby claimed he was angry over

16  the vote to accept Peters' offer and began to verbally harass and abuse the Plaintiff,

17  insisting he would never pay the Plaintiff's commission, that he would 'kill any deal,'

18  and 'have someone kick your ass if I have to.'").)  Section 1589(a) does not cover a threat

19  of that kind.  *See* 18 U.S.C.  § 1589(a) (prohibiting the use of force or threat of force to

20  "provide[] or obtain[] the labor or services of a person").  Because Mr. Biers' only

21  nonconclusory factual allegation does not support a TVPA claim, the court dismisses Mr.

22  Biers' TVPA claim for failure to state claim.

**C.     Leave to Amend**

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has further instructed that a district court should not dismiss a pro se complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203 (9th Cir. 1988)).

In light of these principles, the court grants Mr. Biers leave to amend. Although the court has serious concerns regarding Mr. Biers' ability to remedy the deficiencies identified above, the court cannot say on the present record that "it is absolutely clear" he could not do so. *Id.* Mr. Biers must file his amended complaint, if any, within 30 days of the date of this order. If Mr. Biers fails to timely file an amended complaint, the court will dismiss his claims against State Defendants and his RICO, antitrust, CPA, and TVPA claims against Private Defendants with prejudice.

1      Moreover, given the court's concerns and Mr. Biers' verbose style of pleading, the

2  court imposes the following condition on its grant of leave to amend:  Along with any

3  amended complaint, Mr. Biers must file as an exhibit a redlined version of the amended

4  complaint showing the ways in which the amended complaint differs from his original

5  complaint.  If Mr. Biers files an amended complaint without a redlined version, the court

6  will strike the amended complaint.

7      In the event Mr. Biers chooses to amend his complaint, the court instructs him to

8  consider the deficiencies identified above.  Failure to cure those deficiencies may be

9  interpreted as an indication that further amendment would be futile.  In addition, the court

10  urges Mr. Biers to draft any amended complaint in a more concise and cogent manner.

11  His current complaint is, at best, close to violating Federal Rule of Civil Procedure 8(a)'s

12  requirement that the complaint contain "a short and plain statement . . . showing that the

13  pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  If Mr. Biers does not heed this

14  instruction, the court may dismiss any amended complaint for violating Rule 8(a).  *See*

15  *Roger*, 2013 WL 6693485, at \*2 (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635,

16  640 (9th Cir. 1988)) ("If the factual elements of a cause of action are not organized into a

17  'short and plain statement of the claim,' dismissal for failure to satisfy Rule 8(a) is

18  proper."); *Savage v. Dickinson*, No. 2:11-cv-1652 MCE EFB P, 2013 WL 78475, at \*3

19  (E.D. Cal. Jan. 4, 2013) (citing *McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir.

20  1996)) ("The court simply does not have the resources to scour the 59 pages of plaintiff's

21  complaint and 90 pages of exhibits and organize the allegations contained therein . . . .

22  Instead, the court must insist on plaintiff's compliance with Rule 8, and will accordingly

1    dismiss the complaint . . . .").  Finally, the court notes that leave to amend does not

2    authorize Mr. Biers to add any new claims or defendants.

3                              **IV.    CONCLUSION**

4           For the foregoing reasons, the court GRANTS State Defendants' motion to

5    dismiss (Dkt. # 30), GRANTS Private Defendants' motion to dismiss (Dkt. # 33), and

6    DENIES as moot Mr. Biers' motion for partial summary judgment (Dkt. # 27).  The court

7    DISMISSES without prejudice Mr. Biers' claims against State Defendants and his RICO,

8    antitrust, CPA, and TVPA claims against Private Defendants.  The court GRANTS Mr.

9    Biers leave to file an amended complaint within 30 days as set forth above.

10          Dated this 1st day of June, 2016.

11

12

13   _____

     JAMES L. ROBART

14   United States District Judge

15

16

17

18

19

20

21

22

ORDER- 31